UNITED STATES v. DE GROAT and another.

(*District Court, E. D. Michigan.* April 9, 1887.) ·

1. CRIMINAL LAW—DESTROYING OR STEALING RECORDS—INTENT—REV. ST. U. S. § 5403.

The specific intent to destroy a public record, as such, is the essential element of the offense denounced by section 5403 of the Revised Statutes of the United States; and a defendant who had stolen papers belonging to the internal revenue office, from a barn where they were stored, under the belief that they were old paper, or without knowledge of the fact that they were public records, cannot be convicted under that statute.

2. SAME—FEDERAL OFFENSES—COMMON-LAW INTENDMENTS.

The federal criminal jurisprudence is entirely destitute of any substratum of a common law of crimes and misdemeanors, upon which to draw for supplying elements of the offense; and the courts look only at the statute, using the common law, if necessary, to furnish a definition of the terms used, but never any ingredient of the offense.

Defendants were indicted under Rev. St. § 5403, for taking and carrying away, with the intent to steal or destroy, certain records belonging to the office of the internal revenue collector at Detroit, Michigan. The proof showed that, the government not furnishing sufficient accomodations for their safe keeping, the collector stored them in the stable or barn at his private residence. They were packed loosely in boxes, such as are used for merchandise, some of which were nailed, and others not, and some of the papers were loose on the floor, and altogether there were about 10 or 15 tons so stored in the barn. The records consisted of the accumulations of all the years since the system was adopted, and were the papers that had been kept and filed in the course of business. The collector received them from his predecessor in office, and placed them in his barn for the reason stated, it being used for no other purpose, and fastened with such locks and bolts as are usually found in barns. The defendants, hiring a wagon, had taken four or five thousand pounds of the papers away, and sold them to junk dealers, when they were discovered, arrested, and arraigned on this indictment.

*C. P. Black*, Dist. Atty., for the United States.
*L. F. Bedford* and *D. S. Grece*, for defendants.

HAMMOND, J., (*orally.*) The defendants should not be convicted on this proof, gentlemen of the jury. The statute under which they are charged reads thus:

"Every person who willfully destroys, or attempts to destroy, or, with intent to steal or destroy, takes and carries away any record, paper, or proceeding of a court of justice, filed or deposited with any clerk or officer of such court, or any paper or document or record filed or deposited in any public office, or with any judicial or public officer, shall, without reference to the value of the record, paper, document, or proceeding so taken, pay a fine of not more than two thousand dollars, or suffer imprisonment at hard labor not more than three years, or both."

It is manifest that this statute is not broad enough, and was not intended to punish the mere larceny or theft of the papers or documents *as property*, but that the essential element of the offense is the specific intent to destroy them *as records* of a public office; or, in other words, to obliterate or conceal them as the evidence of that which constitutes their value as public records, or to destroy or impair their legal effect or usefulness as a record of our governmental affairs, be that effect or usefulness what it may. The suggestion that these old papers are of no value, and can be of none, does not avail defendants, because they are useful and may be needed in many ways, as testimony against delinquent and fraudulent tax-payers, for example, or for statistical or historical purposes; and, indeed, the government and its officers are the sole judges of whether they require preservation or not, and the very language of the statute is that the offense is committed "without reference to the value of the record, paper, document, or proceeding so taken." The object of the statute is to preserve the public records and papers intact from all kinds of spoliation, mutilation, or destruction.

But still the specific intent to destroy *a record* must be present, and its absence, through want of knowledge of the fact that the paper or document destroyed constituted a record, relieves the defendants of any criminal offense under this statute, however guilty they may be, under the laws of Michigan, of larceny, or under the subsequent act of congress of March 3, 1875, *c.* 144, (18 St. 479; 1 Supp. Rev. St. 183,) which was passed to further protect the records and other property of the United States from the simple crime of theft or larceny, without regard to any specific intent to destroy them as records. The difference between the two statutes is manifest, and the existence of the later act justifies the construction we are giving the older in this case.

The court is relieved from the decision of the question whether the indictment, being drawn under the older act, can be sustained under the more recent one, by the frank admission of the learned district attorney that the language of the indictment is not broad enough to give the defendants notice that they would be charged under the new act. It is a close question whether the indictment, in its terms, might not describe

either offense; for, distinct as they are in character, the two offenses are quite nearly related in the descriptive character of the acts or conduct of the accused necessary to constitute either, the difference residing in the intention with which the act or conduct complained of is accompanied. But the district attorney acts wisely in concluding not to struggle to hold the prisoners under this later act upon this indictment; for it is plain that the former pleader who drew it did not intend to charge an offense under that act, but only under the older one. Our federal criminal jurisprudence is peculiar, and does not get much aid from common-law intendments, implications, classifications, or designations, and the court is not prepared to say whether an offense charged under one section or statute may be made to fit any other section or statute found applicable, in the character of language used to describe the offense, when interpreted by the implications of the common law of crimes and misdemeanors. We are so destitute of any common law of crime whatever, that great care must be used lest we be misled by its analogies, in enforcing our federal statutes. Unlike the states, we have no substratum of common-law crimes or misdemeanors upon which to draw for purposes of supplying elements of the offense, and we must look wholly and exclusively at the statute, and nothing else; only using the common law, if necessary, as sometimes furnishing a definition of the terms used, but never any ingredient of the offense itself.

The only doubt the court has is whether or not the question as to the defendants' intention should not be submitted to you for decision. But it is plain that these ignorant men, belonging to the class of petty thieves that infest a large city, did not intend to destroy these papers as records of the United States. They had no motive to do that, and thought they were stealing old paper, private property, lying waste in the barn. They had no more reason to know that the papers belonged to a public office, or were records of the United States, than did the junk dealers who baled them to be sent to the paper mill, and either had as much opportunity to know that fact as the other. They were not kept like records, safely and carefully, in a public building or official place, and there was nothing in the surroundings to indicate their official character; certainly not as belonging to the United States, or any of its offices, which are not generally kept in stables or barns. I do not wish to be understood as holding that this offense cannot be committed unless the papers are kept in a public office; for, clearly, it may be committed by taking the records from any place whatever, wherever they may be found, no matter how private or unusual the place; but the intent to destroy *a record* must exist from whatever place the papers are taken. Here there is nothing in the place, or other circumstances of the taking, to indicate *that* intention, or from which it may be fairly inferred as a fact proved by the circumstances; but rather, to the contrary, that the defendants thought they were stealing private property, valuable only as waste paper, or, at most, only to the owner as papers he wished to keep, and in no sense as public records of any kind. There is only one circumstance at which I hesitate, and that is that these papers show on

their face that they are public records. They are for the most part, if not all, printed forms, which have been filled up in the using of them by writing, and altogether indicate their character as public papers, or at least as having had some connection with the internal revenue office. But this indication or information the more intelligent junk dealers had also when they baled them for the paper mill, and, if so be it they knew they were records, they are as guilty as these defendants.

But this fact so urgently insisted upon by the district attorney is delusive. The government or its officials may throw away papers, abandon them, send them to the junk-dealer, or otherwise emancipate them from the category of records, as well as other people; and if its officials so deal with the records, and so keep them, that they appear to be abandoned, that fact may be sufficient to justify others in treating them as abandoned in relation to their character *as records*. Or, to state it in another way, because a paper bears on its face indications of once having been a public record, or that possibly or probably it was such a record, it cannot be fairly implied as a fact that it always continues to be so wherever, or under whatever circumstances, it may be found by one charged with an intention to destroy it as a record. For example, if the clerk of this court should throw a paper into his waste basket, and one should take it away, and destroy it, it could hardly be implied, without more, that there was an intention to destroy a record as such. On the whole, no court should sustain a verdict implying that specific intent, under the circumstances of this case; and, in the performance of a duty which the court owes to the defendants in that behalf, it is proper to direct a verdict of not guilty at your hands, and it will be so entered, by your consent. So ordered.