**UNITED STATES of America**

v.

**Edmund ROSNER et al., Defendants.**

**No. 72 Cr. 782.**

United States District Court,
S. D. New York.

Dec. 14, 1972.

Whitney North Seymour, Jr., U. S. Atty., Southern District of New York, for the United States; Robert Morvillo, Elliot G. Sagor and Kenneth M. Feinberg, Asst. U. S. Attys., of counsel.

Albert J. Krieger, New York City, for defendant Edmund Rosner; Ivan S. Fisher, Alan Scribner, Paul Chevigny,

Graham Hughes, New York City, of counsel.

## OPINION

BAUMAN, District Judge.

Defendant Edmund Rosner has moved to dismiss the indictment pursuant to Rule 12 of the Federal Rules of Criminal Procedure and to suppress evidence of certain conversations between himself and a Government agent. For the reasons that follow, the motion to dismiss is granted as to Count 3 and as to all reference to 18 U.S.C. § 2071 in Count 1. The motion is denied in all other respects. The motion to suppress is also denied.

The indictment, which is something less than a masterpiece of draftsmanship, charges the defendants in eight counts. They are accused of obstruction of justice (Count 2); removal of Government documents (Count 3); and bribery of a public official (Counts 4 through 8). Count 1 charges them with conspiring to commit those substantive crimes and also with conspiring to receive stolen Government property. All of the charges are founded on a single course of alleged criminal conduct.

■ At the outset it should be observed that the legal test of sufficiency is not whether the indictment could have been more artfully and precisely drawn, but whether it states the elements of the offenses intended to be charged, and adequately apprises the defendant of what he must be prepared to meet. Russell v. United States, 369 U.S. 749, 763–764, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); United States v. Debrow, 346 U.S. 374,

376, 74 S.Ct. 113, 98 L.Ed. 92 (1953). Cf. F.R.Cr.P. 7(c).

The Government alleges, in the indictment as supplemented by the bill of particulars, that the defendants met on several occasions with Detective Robert S. Leuci of the New York City Police Department who "under instructions of the United States Attorney's Office for the Southern District of New York assumed the role of a policeman willing to engage in corrupt activities in return for bribes." (Indictment p. 2) Leuci agreed, it is charged, to obtain for the defendants information concerning various criminal matters pending in the District Court and its Grand Jury. Among these were: (a) the case of United States v. DeStefano, Rosner et al., 70 Cr. 1030, in which defendants Rosner and DeStefano were awaiting trial; (b) a Grand Jury investigation into allegations that one Dominick J. Marcone had "fixed" a Queens narcotics case; and, (c) the case of United States v. Bynum, a narcotics conspiracy case then awaiting trial before Judge Pollack. The Government alleges that Rosner and DeStefano, with the help of Lamattina, made payments totalling $2,850 to Leuci for this information. It was intended that Leuci pass on these payments to an allegedly corrupt contact in the United States Attorney's Office in consideration of which he would turn over "3500 material", Grand Jury minutes and the draft of a contemplated indictment.

### I. *Obstruction of Justice*

Count 2 charges the defendants with endeavoring to "influence, obstruct, and impede the due administration of justice" by paying $2,850 for those documents in violation of 18 U.S.C. § 1503.[1]

---

1. 18 U.S.C. § 1503:

"Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any witness, in any court of the United States or before any United States commissioner or other committing magistrate, or any grand or petit juror, or officer in or of any court of the United States, or

officer who may be serving at any examination or other proceeding before any United States commissioner or other committing magistrate, in the discharge of his duty, or injures any party or witness in his person or property on account of his attending or having attended such court or examination before such officer, commissioner, or other committing magistrate, or on

Rosner argues that this count must be dismissed because it fails to charge any acts which violate that statute.

His claim rests on a particular method of reading § 1503. That statute, he argues, can be divided into two parts. The first part proscribes any effort to influence, threaten, or intimidate various specific groups of persons involved in the administration of justice: witnesses, jurors, officers, commissioners, or committing magistrates. The second is the omnibus provision contained in the last two lines: "or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice." Rosner argues that this language only proscribes acts similar to those mentioned in the specific language of the first part. In other words, the omnibus provision must be construed in accordance with the principle known as *eiusdem generis*. Rosner consequently suggests that the second part of the statute only prohibits acts of coercion or intimidation against individuals involved in the judicial process. Since the obtaining of Government documents is not an attempt to coerce or influence anyone, it is not within the contemplation of the statute. Therefore, the argument continues, the indictment fails to state an offense under § 1503.

The difficulty is that the authority for such a construction of § 1503 is not particularly persuasive. Rosner relies principally on United States v. Scoratow, 137 F.Supp. 620 (W.D.Pa.1956), which held that interference with an FBI investigation was not encompassed by the "obstruction of justice" clause of § 1503 because the FBI is an investigative rather than a judicial arm of the Government; and Haili v. United States, 260 F.2d 744 (9th Cir. 1958), which invali-

dated the conviction under that section of a person who induced a convicted felon to violate the terms of her probation. Both of these cases, *Haili* explicitly and *Scoratow* by implication, adopted the *eiusdem generis* construction. Rosner also cites United States v. Essex, 407 F.2d 214 (6th Cir. 1969), which follows *Haili*.

It is eminently clear, however, that this principle of statutory construction has never been applied to § 1503 in this Circuit and has indeed been explicitly rejected. In United States v. Solow, 138 F.Supp. 812 (S.D.N.Y.1956), an indictment charging defendants with the destruction of documents to prevent their production before a Grand Jury was held to state an offense under the omnibus provision. Judge Weinfeld said: "[T]his latter provision . . . is all-embracing and designed to meet any corrupt conduct in an endeavor to obstruct or interfere with the due administration of justice."

United States v. Cohn, 452 F.2d 881 (2nd Cir. 1971), cert. denied 405 U.S. 975, 92 S.Ct. 1196, 31 L.Ed.2d 249 (1972), extended the sweep of § 1503 to the giving of false and evasive testimony before a Grand Jury. The Court of Appeals for this Circuit in United States v. Alo, 439 F.2d 751 (2nd Cir. 1971), cert. denied 404 U.S. 850, 92 S.Ct. 86, 30 L.Ed.2d 89 (1971), had already rejected the application of the *eiusdem generis* principle to 18 U.S.C. § 1505, a companion statute to § 1503, which prohibits the obstruction of proceedings before Congressional committees or administrative agencies. In *Cohn*, the Court went on to say that it could see no reason for adopting the principle with regard to § 1503. See also, United States v. Cohen, 202 F.Supp. 587 (D.

account of his testifying or having testified to any matter pending therein, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, commissioner, or other committing magistrate in his person or

property on account of the performance of his official duties, or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

Conn.1962); United States v. Bonnano, 177 F.Supp. 106 (S.D.N.Y.1959), reversed on other grounds 285 F.2d 408 (2nd Cir. 1960).

■ Regardless, therefore, of how this statute has been construed elsewhere, in this Circuit the omnibus clause of § 1503 has been construed broadly. It embraces the widest variety of conduct that impedes the judicial process. I therefore hold that Count 2 of the Indictment is not defective on its face, and defendant's motion to dismiss that Count is hereby denied.

## II. *Removal of Documents*

■ Count 3 charges the defendants with removing, attempting to remove, and causing to be removed, records, documents and papers kept in the files of the United States Attorney's Office for the Southern District of New York. Such conduct is alleged to violate 18 U.S.C. § 2071.[2] It is not disputed, however, that they are not accused of actually removing documents in the Government's possession, but rather of obtaining photocopies. The Government's Memorandum (at page 5) describes their conduct as follows: "The defendants' alleged scheme had called in part for Leuci's contact to provide Xerox copies of 3500 material, Grand Jury testimony, and other information which was in the files of the United States Attorney's Office." If documents were removed from the files, they were removed temporarily and only for the purpose of reproduction. The Government does not contend that any were permanently removed.

Rosner moves to dismiss this Count on the ground that 18 U.S.C. § 2071 does not proscribe mere photocopying. For the reasons stated below, I agree.

■ After a careful study of the sparse history and limited previous application of Section 2071, I conclude that its purpose is to prevent any conduct which deprives the Government of the use of its documents, be it by concealment, destruction, or removal. The statute is quite old, its original version having been enacted in 1853. (See 10 Stat. 170) Despite its antiquity, legislative history is almost wholly lacking. It has been, however, the subject of careful analysis by a District Judge for the Eastern District of Michigan in 1887. In speaking of Section 2071(a)'s predecessor. Section 5403[3] of the Revised Statutes, that Court said:

"It is manifest that this statute is not broad enough, and was not intended to punish the mere larceny or theft of the papers or documents as property, but that the essential element of the offense is the specific intent to destroy them as records of a public of-

---

2. 18 U.S.C. § 2071:

"(a) Whoever willfully and unlawfully conceals, removes, mutilates, obliterates, or destroys, or attempts to do so, or, with intent to do so takes and carries away any record, proceeding, map, book, paper, document, or other thing, filed or deposited with any clerk or officer of any court of the United States, or in any public office, or with any judicial or public officer of the United States, shall be fined not more than $2,000 or imprisoned not more than three years, or both.

(b) Whoever, having the custody of any such record, proceeding, map, book, document, paper, or other thing, willfully and unlawfully conceals, removes, mutilates, obliterates, falsifies, or destroys the same, shall be fined not more than $2,000 or imprisoned not more

than three years, or both; and shall forfeit his office and be disqualified from holding any office under the United States."

3. Section 5403, Revised Statutes:

"Every person who willfully destroys or attempts to destroy, or, with intent to steal or destroy, takes and carries away any record, paper, or proceeding of a court of justice, filed or deposited with any clerk or officer of such court, or any paper, or document, or record filed or deposited in any public office, or with any judicial or public officer, shall, without reference to the value of the record, paper, document, or proceeding so taken, pay a fine of not more than two thousand dollars, or suffer imprisonment, at hard labor, not more than three years, or both."

fice; or, in other words, to obliterate or conceal them as evidence of that which constitutes their value as public records, or to destroy or impair their legal effect or usefulness as a record of our governmental affairs, be that effect or usefulness what it may." United States v. DeGroat, 30 F. 764 (E.D.Mich.1887).

The First Circuit later came to a similar conclusion, holding that its purpose was "to preserve [papers, documents, and files] as evidence relating to things which concern the public and the government." McInerney v. United States, 143 F. 729 (1st Cir. 1906).

One Court has considered the applicability of this statute in a strikingly similar situation. In Martin v. United States, 168 F. 198 (8th Cir. 1909), the defendant was indicted under Revised Statutes § 5408,[4] the antecedent of § 2071(b). He was accused of having withdrawn from the office of the com-

missioner for certain Indian tribes a roll containing names of Indians, copying the roll during evenings and weekends, and then returning it to the office. Such conduct was held not to violate that section. The Court reasoned that the words "takes away and withdraws" in the statute must be construed with the word "destroys" to mean "a taking away or withdrawal whereby some injury is intended, attempted, or inflicted . . . upon the document or record withdrawn." It noted that the statute was not intended to make criminal a removal "which in no way interferes with the lawful use of the record or document in its proper place." The indictment was quashed.

Each of these Courts recognized, moreover, that the predecessors of Section 2071 were not larceny statutes. The District Court in *DeGroat* contrasted the statute with Chapter 144, 18 Stat. 479,[5] the predecessor of 18 U.S.C. § 641,[6] the

4. Section 5408, Revised Statutes:
   "Every officer, having the custody of any record, document, paper, or proceeding specified in section fifty-four hundred and three, who fraudulently takes away, or withdraws, or destroys any such record, document, paper, or proceeding filed in his office or deposited with him or in his custody, shall pay a fine of not more than two thousand dollars, or suffer imprisonment at hard labor not more than three years, or both; and shall, moreover, forfeit his office and be forever afterward disqualified from holding any office under the government of the United States."

5. Chapter 144, 18 Statutes at Large 479:
   "Any person who shall embezzle, steal, or purloin any money, property, record, voucher, or valuable thing whatever, of the moneys, goods, chattels, records, or property of the United States, shall be deemed guilty of felony, and on conviction thereof before the district or circuit court of the United States in the district wherein said offense may have been committed, or into which he shall carry or have in possession of said property so embezzled, stolen, or purloined, shall be punished therefor by imprisonment at hard labor in the penitentiary not exceeding five years, or by a fine not exceeding five thousand dollars, or both, at the discretion of the court before which he shall be convicted.

   Sec. 2. That if any person shall receive, conceal, or aid in concealing, or have, or retain in his possession with intent to convert to his own use or gain, any money, property, record, voucher, or valuable thing whatever, of the moneys, goods, chattels, records, or property of the United States, which has theretofore been embezzled, stolen, or purloined from the United States by any other person, knowing the same to have been so embezzled, stolen, or purloined, such person shall, on conviction before the circuit or district court of the United States in the district wherein he may have such property, be punished by a fine not exceeding five thousand dollars, or imprisonment at hard labor in the penitentiary not exceeding five years, one or both, at the discretion of the court before which he shall be convicted; and such receiver may be tried either before or after the conviction of the principal felon, but if the party has been convicted, then the judgment against him shall be conclusive evidence in the prosecution against such receiver that the property of the United States therein described has been embezzled, stolen, or purloined."

6. 18 U.S.C. § 641:
   "Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any

specific purpose of which, the Court noted, was to prevent larceny. This distinction was reinforced by the decision of the draftsmen of the 1948 revision of Title 18 to eliminate the phrase "with intent to steal" from Section 2071 because theft was thought to be covered by Section 641. (A comparison of the original version of Section 2071, set out in Footnote 2, supra, with the present version, set out in Footnote 1, indicates the change.)

Section 2071 has not been used to prosecute larceny. It has instead been customarily employed where Government records have been mutilated or destroyed. See, e. g., Kaphan v. United States, 264 F. 323 (9th Cir. 1920); Davidson v. United States, 292 F. 750 (3rd Cir. 1923); Husar v. United States, 26 F.2d 847 (9th Cir. 1928). In recent years, the records involved have frequently been Selective Service System files. See, e. g., United States v. Cullen, 305 F.Supp. 695 (E.D.Wis.1969); United States v. Eberhardt, 417 F.2d 1009 (4th Cir. 1969); United States v. Moylan, 417 F. 2d 1002 (4th Cir. 1969), cert. denied 397 U.S. 910, 90 S.Ct. 908, 25 L.Ed.2d 91 (1970); United States v. Chase, 309 F. Supp. 430 (N.D.Ill.1970), mandamus granted 435 F.2d 1059 (7th Cir. 1970). It has also been used to prosecute the removal of Government records. See United States v. Coplon, 88 F.Supp. 910 (S.D.N.Y.1949); Coplon v. United States, 89 U.S.App.D.C. 103, 191 F.2d 749 (1951), cert. denied 342 U.S. 926, 72 S.Ct. 363, 96 L.Ed. 960 (1951). The essence of the offense charged in such prosecutions has not been larceny, for which Section 641 was available, but the rendering of information unavailable to the Government.

I am therefore compelled to conclude that Section 2071 does not embrace any and all instances of removal of Government records; it proscribes that removal which deprives the Government of the use of the records. That is not the type of removal involved here. There is no allegation that the documents themselves were tampered with, or that the Government was deprived of their use. At most, the Government argues for what might be termed "constructive destruction"; that is, although the documents were not physically destroyed, their utility in the Government's pending prosecutions was destroyed because of their premature disclosure. Such an argument may have some superficial appeal, but I am reluctant to broaden the reach of a criminal statute through such an unprecedented construction. It is axiomatic that criminal statutes must be narrowly construed, and further, it would seem, broadening Section 2071 by including the concept of "constructive destruction" could easily render the statute itself dangerously vague.

In its brief the Government relies heavily, if not exclusively, on United States v. Bottone, 365 F.2d 389 (2d Cir. 1966), cert. denied 385 U.S. 974, 87 S. Ct. 514, 17 L.Ed.2d 437 (1966). There, the Second Circuit considered the applicability of 18 U.S.C. § 2314, involving the interstate transportation of stolen property, to the photocopying of documents. The Court held that even though photocopying was the only criminal activity alleged, an offense was nevertheless made out because "[w]hen the phy-

record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or

Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted—

Shall be fined not more than $10,000 or imprisoned not more than ten years, or both; but if the value of such property does not exceed the sum of $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.

The word "value" means face, par, or market value, or cost price, either wholesale or retail, whichever is greater."

sical form of the stolen goods is secondary in every respect to the matter recorded in them, the transformation of the information in the stolen papers into a tangible object never possessed by the original owner should be deemed immaterial." The Government in citing *Bottone* appears to ignore that the core of the offense charged in 18 U.S.C. § 2314, as the above quotation indicates, is larceny. It is obvious that frequently the transmission of the information contained in documents is just as larcenous as theft of the documents themselves. Hence, had the defendants in the instant case been indicted under 18 U.S.C. § 641, the reasoning of *Bottone* would be fully applicable. But, as I have already pointed out, this indictment alleges no such crime. Section 2071 is not concerned with the transmission of information, as Section 641 arguably is; *Bottone, supra,* therefore is not relevant.

In conclusion, I hold that Count 3 of the Indictment, as supplemented by the allegations in the Government's memorandum of law, fails to state an offense under 18 U.S.C. § 2071. Count 3 of the Indictment is dismissed.

### III. *Bribery of Public Official*

Counts 4 through 8 of the Indictment charge the defendants with giving (or aiding and abetting the giving of) money to a public official on five different occasions in October, 1971 with intent to influence his official acts in violation of 18 U.S.C. § 201(b).[7]

Though the indictment does not identify the public official to whom the bribes are alleged to have been given, the supplemental bill of particulars ordered by the Court reveals that that individual was Special Assistant United States Attorney Nicholas Scoppetta.

Rosner nonetheless contends that these counts are legally insufficient because the indictment fails to name Scoppetta. Alternatively, he argues that it is illogical to charge him with bribing a public official since the Government concedes that he never made a direct offer to a public official.

The Government, on the other hand, contends that the indictment, as supplemented by the supplemental bill of particulars, alleges all the elements of the crimes charged in Counts 4 through 8 of the Indictment and is therefore legally sufficient.

The unstated premise of the movant's argument is that a bill of particulars cannot save an otherwise invalid indictment. This principle, of course, is well settled in our jurisprudence. See *Russell v. United States*, 369 U.S. 749, 764, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); *Hagner v. United States*, 285 U.S. 427, 431, 52 S.Ct. 417, 76 L.Ed. 861 (1932). However, it does not necessarily follow that the Government's failure to name Scoppetta as the public official makes the indictment impermissibly vague.

The essential function of an indictment is to provide the accused with a description of the particular act he is alleged to have committed so that he will be able to defend himself against the accusation. *Russell v. United States, supra*; *United States v. Tomasetta*, 429 F.2d 978 (1st Cir. 1970). This principle is derived directly from the Sixth Amendment guarantee of the right to be informed of the nature and cause of

---

7. 18 U.S.C. § 201:

"(b) Whoever, directly or indirectly, corruptly gives, offers or promises anything of value to any public official or person who has been selected to be a public official, or offers or promises any public official or any person who has been selected to be a public official to give anything of value to any other person or entity, with intent—

(1) to influence any official act; or

(2) to influence such public official

or person who has been selected to be a public official to commit or aid in committing, or collude in, or allow, any fraud, or make opportunity for the commission of any fraud, on the United States; or

(3) to induce such public official or such person who has been selected to be a public official to do or omit to do any act in violation of his lawful duty."

an accusation and is basic to our adversary system of justice. United States v. Tomasetta, supra. Cf. United States v. Agone, 302 F.Supp. 1258 (S.D.N.Y. 1969). Indeed, unless the accused is supplied with sufficient information to identify the conduct which the Grand Jury has deemed adequate to support an indictment, he is left at the mercy of unfettered prosecutorial discretion. Such power "to roam at large" in this fashion is not allowable. Russell v. United States, supra, 369 U.S. at 768–771, 82 S.Ct. at 1038.

However, it is essential to note that a fair description of a crime for purposes of permitting an adequate defense necessarily varies with the nature of the offense and the peculiarities of defending against the charge involved. See United States v. Tomasetta, supra, at 979; United States v. Agone, supra, at 1260–1261. The question is whether the indictment as a whole conveys sufficient information to properly identify the conduct relied upon by the Grand Jury in returning the indictment.

Counts 4 through 8 of this Indictment charge the defendants with indirectly having given money to a public official of the United States with the intent to induce him to do specified acts in violation of his duty. Thus, this is not a case in which Rosner can be convicted for an offense completely separate from that for which he was indicted. He has been advised of the name of the alleged intermediary and the date and place of each alleged offer. Under these circumstances, I find that this is a case in which the accused has "been fully protected by a bill of particulars." United States v. Polakoff, 112 F.2d 888 (2nd Cir. 1940).

8. Count 1 charges Rosner with conspiring to: (1) obstruct justice in violation of 18 U.S.C. § 1503; (2) receive stolen Government documents in violation of 18 U.S.C. § 641; (3) remove Government documents in violation of 18 U.S.C. § 2071; (4) defraud the United States in violation of 18 U.S.C. § 371; and (5) bribe a public official in violation of 18 U.S.C. § 201(b).

Defendant Rosner's alternative argument does not require extended discussion. The fact that the defendant is alleged to have given Scoppetta money through an intermediary does not affect the sufficiency of the indictment. Section 201(b) expressly prohibits "indirect" as well as direct bribes. See United States v. Braver, 450 F.2d 799 (2nd Cir. 1971), cert. denied 405 U.S. 1064, 92 S.Ct. 1493, 31 L.Ed.2d 794 (1972); United States v. Cogan, 266 F.Supp. 374 (S.D.N.Y.1967).

Accordingly, the motion to dismiss Counts 4 through 8 as legally insufficient is denied.

## IV. *Conspiracy*

The remaining count charges conspiracy.[8] The defendant argues that this count must fail to the extent that the facts do not make out the substantive offenses charged in the indictment.[9]

The short answer to this contention is that with the exception of the third Count, the facts alleged are sufficient to establish those substantive offenses.

However, even assuming otherwise, Rosner may still properly be charged with conspiracy. Williamson v. United States, 207 U.S. 425, 446–447 (1908); United States v. Ventimiglia, 145 F.Supp. 37, 44–45 (D.Md.1956), rev'd on other grounds, 242 F.2d 620 (4th Cir. 1957); United States v. Perlstein, 126 F.2d 789 (3rd Cir. 1942), cert. denied 316 U.S. 678, 62 S.Ct. 1106, 86 L.Ed. 1752 (1942). Conspiracy is a separate and distinct offense from the crime that is its object and does not require the commission of any completed substantive offense. Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1948).

9. All of the substantive counts of the indictment are based on the allegations underlying the conspiracy charge. However, there is no substantive charge which corresponds to the charge that the defendant conspired to receive stolen Government documents in violation of 18 U.S.C. § 641.

United States v. Ventimiglia, supra, illustrates this point. In that case, the defendants were charged with unlawfully paying and conspiring to pay money to a labor representative of corporate employees. The evidence adduced at trial however, established that the person to whom the money was paid was not a qualified labor representative within the meaning of the statute prohibiting such payments. Though the Court granted the defendants' motion for a judgment of acquittal as to the substantive charges, it denied the motion as to conspiracy. The Court said:

"For liability, it is sufficient if the end for which the defendants conspired and toward the consummation of which an overt act was done, would have been unlawful if consummated as defendants planned." 145 F.Supp. at 45.

██ The conspiracy charged in Count 1 of this Indictment is alleged to have had five objects. However, in view of the fact that I have dismissed Count 3 for legal insufficiency, it is clear that Rosner cannot be charged with conspiring to violate 18 U.S.C. § 2071.

Accordingly, defendant's motion to dismiss Count 1 of the Indictment is denied, but all reference to 18 U.S.C. § 2071 is ordered stricken.

### V. *Motion to Suppress Evidence*

██ The defendant has also moved for an order suppressing any and all evidence obtained from him in violation of his right to counsel under the Sixth Amendment. He argues that a significant part of the evidence that will be used against him was obtained by Detective Leuci in conversations with him while he was under another indictment [70 Cr. 1030; see 347 F.Supp. 442 (S.D. N.Y.1972) and 464 F.2d 845 (2nd Cir. 1972)]. Rosner believes that tapes of those conversations, as well as Leuci's account of them, will be introduced in evidence at trial. He urges that the introduction of such evidence will violate the holding of Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d

246 (1964). *Massiah* held that where federal agents deliberately elicited incriminating statements from a defendant after indictment in the absence of his counsel, the defendant's rights under the Sixth Amendment were violated and such statements could not be used against him at trial. The holding of the Court in *Massiah* was, however, a limited one. The Court noted (at p. 207):

"[w]e do not question that in this case, as in many cases, it was entirely proper to continue an investigation of the suspected criminal activities of the defendant and his alleged confederates, even though the defendant had already been indicted. All that we hold is that the defendant's own incriminating statements, obtained by federal agents under the circumstances here disclosed, could not constitutionally be used by the prosecution as evidence against *him* at his trial."

The question presented for resolution here is whether incriminating statements, elicited from a defendant then under indictment, must be suppressed at a subsequent trial on a different charge. I shall assume for the sake of argument that the statements made in defendant Rosner's conversations with Leuci would not have been admissible at the trial of the previous case. Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), sheds light on whether a violation of Sixth Amendment rights during an earlier proceeding will taint evidence offered at a later one. There, a Government informer attended meetings of defendants and their lawyers during a trial that ended in a hung jury. Evidence supplied by that informer was instrumental in causing a subsequent indictment for bribing members of that jury. It was argued in *Hoffa* that the presence of a Government informer on premises used by defendants to confer with their lawyers violated the Sixth Amendment because the confidence of the attorney-client relationship was intruded upon. (That is, of course, a Sixth Amendment violation different from that alleged here and in *Massiah*.)

The Court assumed *arguendo* that this conduct was violative of the Sixth Amendment, and suggested that introduction of the informer's evidence at the original trial would have invalidated a conviction. But the question before the Court there, as here, was whether the evidence thus gleaned by an informer was inadmissible at a subsequent trial on a different charge. The Court concluded that "even if . . ., a situation could be hypothesized in which the Government's previous activities in undermining a defendant's Sixth Amendment rights at one trial would make evidence obtained thereby inadmissible in a different trial on other charges, the case now before us does not remotely approach such a situation." This was found to be so because the incriminating statements of the defendant related to the commission of a separate offense, the attempted bribery of jurors, that bore no relation to the crimes about which the informer was attempting to elicit information for the first trial.

The Second Circuit has come to a similar conclusion. In United States v. Edwards, 366 F.2d 853 (2nd Cir. 1966), it stated "we do not read *Massiah* as forever immunizing a defendant under indictment for a distinct and unrelated crime from the normal techniques employed by law enforcement officials to investigate other and wholly separate offenses." 366 F.2d at 873.

I find that in the instant case, the alleged attempt by the defendant to obtain Grand Jury minutes, 3500 material, and the draft of an indictment was an offense wholly unrelated to the crime of subornation of perjury for which he was awaiting trial in 70 Cr. 1030. Accordingly, defendant's motion to suppress all evidence of his conversations with Detective Leuci is denied.

To summarize, the motion to dismiss is granted as to Count 3 and as to all reference to 18 U.S.C. § 2071 in Count 1. The motion is denied in all other respects. The motion to suppress is also denied.

It is so ordered.