MURPHY, Circuit Judge,
concurring in part and dissenting in part.
I. INTRODUCTION
I join all portions, of the majority opinion, with the exception of sections II.C.l (addressing the calculation of Shari Lang’s base offense) and II.C.2 (addressing Lang’s conviction for violating 18 U.S.C. § 2071(a)). As to those two specific sections of the majority opinion, I respectfully dissent.
With regard to Lang’s § 2071(a) conviction, the majority concludes that her removal of a photocopy of a sealed affidavit from the district court clerk’s office constitutes a violation of § 2071(a). See Majority Op. at 1221-22. Lang’s conduct, however, does not fall within the parameters of § 2071(a). The plain language of § 2071(a), verified within its historical context, demonstrates that it was intended to criminalize the obliteration, destruction, or theft of documents from the public record, rather than the disclosure of the information contained in those documents.
As to the calculation of Lang’s base offense level, the majority concludes that the district court properly considered all drug quantities distributed by the Perez Organization in arriving at Lang’s base offense level, without regard to whether those quantities were reasonably foreseeable to Lang. See Majority Op. at 1219-21. The approach adopted by the majority is inconsistent with the weight of precedent, creates a system where accessories can be punished much more harshly than the principal whom they aided, and renders U.S.S.G. § 1B1.3 application note 10 superfluous. At a minimum, the relevant Guideline provisions are so contradictory and ambiguous, that the rule of lenity should apply.
II. DISCUSSION

A. Lang’s 18 U.S.C. § 2071(a) Conviction

This case presents the following narrow question: Does the removal of a photocopy of a document filed with the Clerk of the United States District Court for the Dis *1225 trict of Utah constitute a violation of 18 U.S.C. § 2071. In answering that question in the affirmative, the majority relies on the decision in United States v. DiGilio, 588 F.2d 972, 976-78 (3d Cir.1976), to conclude that the copy of the affidavit made by Lang is itself a governmental record. Majority Op. at 1221-22. The majority further concludes that because the original affidavit was filed with the clerk’s office the copy must also necessarily have been filed. Id. at 1222. Based on these two subsidiary conclusions, the majority holds that “Mrs. Lang’s theft of the affidavit copy violates § 2071.” Majority Op. at 1222 (emphasis added).
The problem with the majority’s analysis, and its reliance on DiGilio, is that Lang was not indicted for violating 18 U.S.C. § 641, the provision of the United States Code which criminalizes the theft of government records. Instead, she was indicted for violating 18 U.S.C. § 2071. Section 2071 and § 641 were designed to deal with entirely different evils.
Section 2071[1] is one of six provisions set out in chapter 101 of title 18. Each of the six provisions in chapter 101 relates to either (1) the concealment, removal, mutilation, or falsification of government records or reports, or (2) the failure by government officials to file reports as required by law. See 18 U.S.C. §§ 2071 to 2076. It is clear from the plain language of § 2071, and its placement in chapter 101 with other provisions relating to the accuracy of the record of government affairs, that § 2071 was designed for the narrow purpose of criminalizing the obliteration of information from the record of public affairs. In contrast, the theft of government records is prohibited by § 641,[2] which is set out in chapter 31 of title 18. Chapter 31 prohibits numerous kinds of thefts and embezzlements, including both public and nonpublic monies, documents, and records. In concluding that Lang’s conduct violates § 2071, the majority has ignored key distinctions in the operative spheres of §§ 641 and 2071.
*1226 In United States v. Rosner, 352 F.Supp. 915 (S.D.N.Y.1972) the court was faced with a set of facts remarkably similar to the facts, of this case. The defendant in Rosner was accused of copying grand jury materials and providing the copies .to an investigator posing as a corrupt police officer. Id. at 917. After he was indicted on charges of violating § 2071(a), the defendant moved to dismiss the indictment on the ground that § 2071(a) did not criminalize the mere photocopying of government records, 'even sensitive records like grand jury transcripts. Id. at 919.
The Rosner court began by undertaking an extensive historical analysis of § 2071 and its predecessors. Id. at 919-21. That analysis, coupled with the' restrictive language of the statute, led the Rosner court to conclude that § 2071 was directed to a particularly narrow evil: obliteration from the public record of official documents of the United States. Id. at 919-20. . Because the photocopying of the grand jury documents had not obliterated the documents from the public record, the Rosner court concluded that the indictment did not set out a violation of § 2071. Id. at 921-22. According to the court in Rosner
[The] purpose [of § 2071] is to prevent any conduct which deprives the Government of the. use of its documents, be it by concealment, destruction, or removal.... Despite its antiquity, legislative history is almost wholly lacking. It has been, however, the subject of careful analysis by a District Judge for .the Eastern District of Michigan..;. In speaking of Section 2071(a)’s predecessor!,] • • • that Court said:
[ ]It is manifest that this statute is not broad enough,. and was not intended to punish the mere larceny or theft of the papers or documents as property, but that the essential element of the offense is the specific intent to destroy them as records of a public office; or, in other words, to obliterate or conceal them as evidence of that which constitutes their value as public records, or to destroy or impair their legal effect or usefulness as a record of our governmental affairs, be that effect or usefulness what it may.[]
United States v. DeGroat, 30 F. 764 (E.D.Mich.1887).
The First Circuit later came to a similar conclusion, holding that its purpose was “to preserve [papers, documents, and files] as evidence relating to things which concern the public and the government.” McInerney v. United States, 143 F. 729 (1st Cir.1906).
One Court has considered the applicability of this statute in a strikingly similar situation. In Martin v. United States, 168 F. 198 (8th Cir.1909), the defendant was indicted under ... the antecedent of § 2071(b). He was accused of having withdrawn from the office of the commissioner for certain Indian tribes a roll containing names of Indians, copying the roll during evenings and weekends, and then returning it to the office. Such conduct was held not to violate that section. The Court reasoned that ... the statute was not intended to make criminal a removal “which in no way interferes with the lawful use of the record or document in its proper place.” The indictment was quashed.
Each of these Courts recognized, moreover, that the predecessors of Section 2071 were not larceny statutes. The District Court in DeGroat contrasted the statute with ... the predecessor of 18 U.S.C. § 641, the specific purpose of which, the Court noted, was to prevent larceny. This distinction was reinforced by the decision of the draftsmen of the 1948 revision of Title 18 to eliminate the phrase “with intent to steal” from Section 2071 because theft was thought to be covered by Section 641....
*1227 Section 2071 has not been used to prosecute larceny. It has instead been customarily employed where Government records have been mutilated or destroyed. See, e.g., Kaphan v. United States, 264 F. 323 (9th Cir.1920); Davidson v. United States, 292 F. 750 (3rd Cir.1923); Husar v. United States, 26 F.2d 847 (9th Cir.1928). In recent years, the records involved have frequently been Selective Service System files. See, e.g., United States v. Cullen, 305 F.Supp. 695 (E.D.Wis.1969); United States v. Eberhardt, 417 F.2d 1009 (4th Cir.1969); United States v. Moylan, 417 F.2d 1002 (4th Cir.1969), cert. denied 397 U.S. 910, 90 S.Ct. 908, 25 L.Ed.2d 91 (1970); United States v. Chase, 309 F.Supp. 430 (N.D.Ill.1970), mandamus granted 435 F.2d 1059 (7th Cir.1970). It has also been used to prosecute the removal of Government records. See United States v. Coplon, 88 F.Supp. 910 (S.D.N.Y.1949); Coplon v. United States, 89 U.S.App.D.C. 103, 191 F.2d 749 (1951), cert. denied 342 U.S. 926, 72 S.Ct. 363, 96 L.Ed. 960 (1951). The essence of the offense charged in such prosecutions has not been larceny, for which Section 641 was available, but the rendering of information unavailable to the Government.
Rosner, 352 F.Supp. at 919-21 (footnote omitted).
The Rosner court’s thorough and well-supported analysis is persuasive. Its decision that § 2071 is violated only by the obliteration of information from the record of government affairs is fully supported by the plain language of § 2071 and the placement of § 2071 in chapter 101 with other provisions relating to the accuracy of the record of governmental affairs. Finally, it must be further noted that neither the government nor the majority has cited a single case from the long history of the statute in which § 2071 has successfully been used to prosecute the photocopying of government documents. In fact, DiGi-lio, the only case relied on by the majority, dealt with the prosecution under § 6hl of an individual who made photocopies of FBI records and provided the records to the subject of the FBI investigation. 538 F.2d at 975. The effect of the majority’s ruling is a blurring of the lines between § 2071 and § 641 and the partial or full redundancy of either one or both of those provisions.
Perhaps recognizing the force of the analysis set out in Rosner, the government itself has declined to advocate the very rule adopted by the majority in this case. While the majority has ruled that the removal of a photocopy of a document filed with the clerk of a federal court is always a violation of § 2071, Majority Op. at 1221-22, the government asserts that the removal of a photocopy of a filed document should only amount to a violation of § 2071 when the stolen document’s secrecy, not the information contained within the document, represents its entire value to the government.[3] That is, the government ar *1228 gues that Lang’s removal of a photocopy of the affidavit and release of its contents constituted a constructive destruction of the affidavit, thereby bringing her actions within the ambit of § 2071.
This contention was also considered and rejected by the court in Rosner. According to Rosner,
[The court is] compelled to conclude that Section 2071 does not embrace any and all instances of removal of Government record; it proscribes that removal which deprives the Government of the use of the records. That is not the type of removal involved here. There is no allegation that the documents themselves were tampered with, or that the Government was deprived of their use. At most, the Government argues for what might be termed “constructive destruction”; that is, although the documents were not physically destroyed, their utility in the Government’s pending prosecutions was destroyed because of their premature disclosure. Such an argument may have some superficial appeal, but I am reluctant to broaden the reach of a criminal statute through such an unprecedented construction. It is axiomatic that criminal statutes must be narrowly construed, and further, it would seem, broadening Section 2071 by including the concept of “constructive destruction” could easily render the statute itself dangerously vague.
In its brief the Government relies heavily, if not exclusively, on [United States v. Bottone, 365 F.2d 389 (2d Cir.1966).] There, the Second Circuit considered the applicability of 18 U.S.C. § 2314, involving the interstate transportation of stolen property, to the photocopying of documents. The Court held that even though photocopying was the only criminal activity alleged, an offense was nevertheless made out because “[w]hen the physical form of the stolen goods is secondary in every respect to the matter recorded in them, the transformation of the information in the stolen papers into a tangible object never possessed by the original owner should be deemed immaterial.” The Government in citing Bottone appears to ignore that the core of the offense charged in 18 U.S.C. § 2314, as the above quotation indicates, is larceny. It is obvious that frequently the transmission of the information contained in documents is just as larcenous as theft of the documents themselves. Hence, had the defendants in the instant case been indicted under 18 U.S.C. § 641, the reasoning of Bottone would be fully applicable. But, as I have already pointed out, this indictment alleges no such crime. Section 2071 is not concerned with the transmission of information, as Section 641 arguably is; Bottone, supra, therefore is not relevant.
Id. at 921-22.
Although Lang’s conduct in this case was despicable, this court has no power to rewrite § 2071 in the way advocated by the government. See United States v. Bass, 404 U.S. 336, 348, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971) (“[B]ecause of the seri *1229 ousness of criminal penalties, and because criminal punishment usually represents the moral condemnation of the community, legislatures and not courts should define criminal activity. This policy embodies the instinctive distastes against men languishing in prison unless the lawmaker has clearly said they should.” (quotation omitted)). Make no mistake, the government has asked this court to rewrite § 2071(a) so that it reads as follows:
Whoever willfully and unlawfully conceals, removes, mutilates, obliterates, or destroys, or attempts to do so, or with intent to do so takes and carries away any record, proceeding, map, book, paper, document, or other thing, filed or deposited with any clerk or officer of any court of the United States, or in any public office, or with any judicial or public officer of the United States[, or discloses the contents of any such document thereby constructively destroying the usefulness of the document to the government], shall be. fined under this title or imprisoned not more than three years, or both.
It is important to note that under the government’s reconstructed version of § 2071(a), no photocopying is necessary. The same result would have logically applied had Lang simply memorized the contents of the affidavit and disclosed the contents to her husband upon arriving home that evening. In such a hypothetical case, as in this one, the usefulness of the affidavit would have been “constructively destroyed.” Such a result is so far removed from the plain language of § 2071(a) and in such disregard of the Supreme Court’s admonition that criminal statutes be construed narrowly, Bass, 404 U.S. at 347-48, 92 S.Ct. 515, that the government’s proposed interpretation of § 2071 must be rejected.
In sum, neither the majority’s nor the government’s reading of § 2071 is consistent with that provision’s plain language or legislative history. It is telling that in the long history of § 2071, there does not appear to be a single reported case in which that statute was successfully employed to prosecute conduct like that at issue in this case. For these reasons, and because the majority's approach amounts to at least a partial merger of §§ 2071 and 641, I respectfully dissent from the majority’s conclusion that Lang’s conduct falls within the ambit of § 2071.

B. Calculation of Lang’s Base Offense Level

The majority concludes that the district court properly calculated Lang’s base offense level by reference to all drugs distributed by the Perez Organization, whether or not Lang knew or should have reasonably known of the drug quantities. See Majority Op. at 1219-21. In so doing, the majority adopts the minority approach, represented by the Seventh Circuit’s opinion in United States v. Girardi, 62 F.3d 943 (7th Cir.1995), and rejects the better-reasoned majority approach, represented by the Fifth Circuit’s opinion in United States v. Warters, 885 F.2d 1266 (5th Cir.1989) and the Sixth Circuit’s opinion in United States v. Shabazz, 263 F.3d 603 (6th Cir.2001). Unfortunately, the approach adopted by the majority creates a system where accessories can be punished much more harshly than the principal whom they aided and, more importantly, renders U.S.S.G. § 1B1.3" application note 10 superfluous.
As noted by the majority, the resolution of this case is driven by the meaning of two different provisions of the Sentencing Guidelines. Application note 1 to U.S.S.G. § 2X3.1 provides that in calculating a defendant’s base offense level the court should “[a]pply the base offense level [for the underlying offense] plus any applicable specific offense characteristics that were *1230 known, or reasonably should have- been known, by the defendant; see Application Note 10 of the Commentary to § 1B1.3 (Relevant Conduct).” Application note 10 ' to U.S.S.G. § 1B1.3 provides, in turn, that “[i]n the case of ... accessory after the fact, the conduct for which the defendant is accountable includes all conduct relevant to determining the offense level for the underlying offense that was known, or reasonable should have been known, by the defendant.” According to the majority, these two provisions appear to be contradictory when read in isolation. See Majority Op. at 1220 (“Thus, § 2X3.1, applied in isolation, would only extend the reasonable-knowledge requirement to ‘specific offense characteristics’ of the underlying offense.”); id. (“Therefore reading Application Note 10 in isolation would extend the reasonable-knowledge requirement to all conduct used to determine the sentence for the underlying offense, not only specific offense characteristics.”). Finding an apparent contradiction, the majority resolves the “prima facie tension” between' the two provisions by concluding that the term “includes” in application note 10 to § 1B1.3 is not exhaustive and that application note 1 to § 2X3.1 merely sets forth an additional type of relevant conduct, i.e., conduct not reasonably foreseeable' to the accessory, which must be included in calculating the accessory’s base offense level. Id. at 1220-21; see also Girardi, 62 F.3d at 946.
Like the Fifth and Sixth Circuits, I see no conflict between the two application notes at issue here. By cross-referencing application note 10 to § 1B1.3, it appears the Sentencing Commission was specifically noting that the rule set out in application note 1 to § 2X3.1 is entirely consistent with the rule set out in § 1B1.3. See Shabazz, 263 F.3d at 608-09; Warters, 885 F.2d at 1272-73. Otherwise, “it is difficult to see why Application Note 1 to section 2X3.1 cross-references section 1B1.3.” Shabazz, 263 F.3d at 609.
The majority’s reading of the relevant Guideline provisions posits something like the following course of action on the part of the Sentencing Commission. The Sentencing Commission intended to set out an application note directing that all aspects of an accessory’s offense level- — base offense level, specific offense characteristics, Chapter Two cross-references, and Chapter Three adjustments — be calculated with reference to that conduct within the underlying offense of which the accessory should have reasonably been aware. U.S.S.G. § 1B1.3 cmt. n. 10. The Sentencing Commission then set forth a different provision (1) mandating that the accessory’s base offense level would actually include conduct within the underlying offense of which the accessory was not aware, (2) reiterating that specific offense characteristics would only be included in the accessory’s total offense level if the accessory should reasonably have been aware of the conduct giving rise to such an adjustment, and (3) failing to further comment on how Chapter Two cross-references and Chapter Three adjustments would apply to the calculation of an accessory’s total offense level. U.S..S.G. § 2X3.1 cmt. n. 1. Further, the.Sentencing Commission altered course without any explanation, but instead simply included a naked cross-reference to the earlier, partially-repudiated application note. To say the least, I find such a course of action highly unlikely. Instead, it seems apparent that the Sentencing Commission simply attempted to incorporate the standards set out in U.S.S.G. § IB 1.3 application note 10 into U.S.S.G. § 2X3.1 application note 1 and did so in a somewhat sloppy fashion. See Shabazz, 263 F.3d at 608 (noting that the Guideline provisions at issue here are “hardly a model of clarity”).
*1231 This conclusion is bolstered by a consideration of the repercussions inherent in the approach adopted by the majority. Under the majority’s approach, an accessory can face a far stiffer punishment than the principal whom the accessory aids. For instance, assume a young women becomes involved in a massive drug conspiracy. The young woman’s involvement in the drug conspiracy is exceedingly limited, as is the extent of her reasonable knowledge of the scope of the conspiracy. When the government begins to prosecute the members of the conspiracy, the young woman approaches her father, explains the limited nature of her actions and her understanding of the scope of the conspiracy, and asks for his assistance. The" father provides the woman with money for a bus ticket to another state, hoping that the young woman can avoid capture by the authorities. When the young woman is eventually arrested, both she and her father are prosecuted.
As a principal, all aspects of the young woman’s offense level are calculated by reference to her own acts and “reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity.” U.S.S.G. § lB1.3(a)(l)(A) & (B). The situation for the father is entirely different, however. Under the majority’s approach the base-offense-level component of the father’s total offense level is calculated with regard to the entire amount of drugs distributed by the underlying conspiracy, thereby potentially resulting in a sentence far more severe then that imposed on the young woman. Such a result is at odds with the very theory of criminalizing the acts of accessories. See Shabazz, 263 F.3d at 609-10. Without a clear indication on the part of the Sentencing Commission that such a result is required, I simply cannot adopt the reading of U.S.S.G. § 2X3.1 application note 1 set forth in the majority opinion. In sum, I agree with the Fifth and Sixth Circuits that U.S.S.G. § 2X3.1 clearly incorporates U.S.S.G. § 1B1.3.
In the alternative, the disparate interpretations given to the relevant provisions, all under the banner of plain language, by Girardi and the majority, on one hand, and Warters, Shabazz, and this dissent, on the other hand, demonstrate that this is an appropriate case for application of the rule of lenity. Because the utterly ambiguous language of these two application notes simply cannot resolve this sentencing dispute, the rule of lenity counsels in favor of adopting the construction of the Guidelines advanced by Lang. United States v. Wilson, 10 F.3d 734, 736 (10th Cir.1993).
Because I disagree with the majority both as to the plain meaning of the relevant provisions and as to the applicability of the rule of lenity to this case, I respectfully dissent.
III. CONCLUSION
For those reasons set out above, I would affirm the district court in all respects except for its treatment of Lang’s § 2071 conviction and its calculation of her base offense level. As to the § 2071 charge, I would remand to the district court for the narrow purpose of vacating the § 2071(a) conviction, sentence, and special assessment. As to the Lang’s base offense level, I would remand to the district court with directions to recalculate Lang’s offense level only by reference to the conduct of the Perez Organization of which she was aware or reasonably should have been aware.

. Section 2071 provides as follows:
(a) Whoever willfully and unlawfully conceals, removes, mutilates, obliterates, or destroys, or attempts to do so, or, with intent to do so takes and carries away any record, proceeding, map, book, paper, document, or other thing, filed or deposited with any clerk or officer of any court of the United States, or in any public office, or with any judicial or public officer of the United States, shall be fined under this title or imprisoned not more than three years, or both.
(b) Whoever, having the custody of any such record, proceeding, map, book, document, paper, or other thing, willfully and unlawfully conceals, removes, mutilates, obliterates, falsifies, or destroys the same, shall be fined under this title or imprisoned not more than three years, or both; and shall forfeit his office and be disqualified from holding any office under the United States. As used in this Subsection, the term "office” does not include the office held by any person as a retired officer of the Armed Forces of the United States.

. Section 641 provides as follows:
Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted-Shall be fined under this title or imprisoned not more than ten years, or both; but if the value of such property does not exceed the sum of $1,000, he shall be fined under this title or imprisoned not more than one year, or both.
The word "value” means face, par, or market value, or cost price, either wholesale or retail, whichever is greater.

. The government argues as follows in its brief:
The [Rosner'] court rejected the government’s argument and held that Section 2071 was limited to those cases where removal of the document renders the information unavailable to the government. Therefore, under the Rosner court's analysis, a violation of Section 2071 would occur only where the original and all copies of the document are removed from the government's file so that the government no longer has access to the information.
The Rosner decision fails to account for the varying purposes of different types of government documents. In most situations, the Rosner court would be correct that the removal of a photocopy would not destroy the usefulness of the original document. Because the value of most government documents lies in the information contained therein, the government would *1228 not be deprived of the document’s value so long as the information remains in its files.
In contrast, the only purpose of filing the sealed affidavit in this case was to allow the government to secretly place a tracking device on the vehicle used by the Perez Organization. ... Ms. Lang's removal of that document ''interfere[d] with the lawful use of the record" by preventing the government from secretly installing the tracking device. Therefore, unlike the removal of the copies in Martin and Rosner, Ms. Lang's removal of the copy wholly destroyed the legal effect and usefulness of the sealed affidavit.
Govt. Br. at 38-40 (citations omitted).