**UNITED STATES of America,**
**Plaintiff,**

v.

**James KNIFE, Defendant.**

**No. CR73-3028.**

United States District Court,
D. South Dakota,
Central Division.

March 18, 1974.

---

R. D. Hurd, Asst. U. S. Atty., Sioux Falls, S. D., for plaintiff.

Mick Grossenburg, of Day & Grossenburg, Winner, S. D., for defendant.

## MEMORANDUM DECISION

NICHOL, Chief Judge.

This case came to trial under the following one count indictment:

> On or about the 14th day of July, 1973, in the district of South Dakota, James Knife corruptly did endeavor to influence, obstruct and impede the due administration of justice in the United States District Court for the District aforesaid, in that said James Knife, knowing that James Deuchar, Chief of Police, Mission, South Dakota, had arrested one Theodore Willis Standing Cloud, who was charged in said District with violation of 18 U.S. C. Sec. 1503, threatened physical injury to said James Deuchar unless the aforementioned Theodore Willis Standing Cloud was released from jail, in violation of Title 18 U.S.C. Sec. 1503.

Defendant Knife was found guilty by a jury on November 20, 1973, and he thereupon moved for an arrest of judgment. This Court has thoroughly reviewed the law in this area, has examined the briefs prepared by both sides and, as put forth by the following discussion has concluded that the arrest of judgment should be granted as a matter of law.

Acknowledging the jury's role as the ultimate decider of the facts, and therefore accepting the factual evidence presented in the light most favorable to the government, I cannot reconcile the evidence supporting the charge in the indictment against James Knife as coming within the purview of 18 U.S.C. Sec. 1503, the federal obstruction of justice statute. Defendant Knife's embellished threats (delivered after Knife had consumed a few drinks) to Police Chief Deuchar (who, during the trial referred to Knife as a "good friend") to let Ted Standing Cloud out of jail or else "You I'm going after personally", and "there will be bloodshed and we'll burn this town down" cannot be seen as "conduct designed to interfere with the process of arriving at an appropriate judgment in a pending case and which would disturb the ordinary and proper functions of the court", within the context of Sec. 1503. Haili v. United States, 260 F.2d 744, 746 (9th Cir. 1958).

Extensive research of the case law in this area has revealed to me that the cases upholding convictions under Sec. 1503 invariably show some kind of tampering or endeavor to tamper with a pending judicial or quasi-judicial proceeding. This includes all cases cited by the government during trial proceedings and in its brief to the court: *viz.* Astwood v. United States, 1 F.2d 639 (8th Cir. 1924), involving the inducement of a person to fail to appear in court and answer to a charge pending against her; Thomas v. United States, 15 F.2d 958 (8th Cir. 1926), involving an endeavor to influence the jury by attempting to bribe the bailiff and jurors to hang the jury; Harper v. United States, 27 F.2d 77 (8th Cir. 1928), involving a conspiracy and agreement for a false prosecution to be instituted against a material witness in a pending case based on false affidavits; Catrino v. United States, 176 F.2d 884 (9th Cir. 1949), involving a promise to alter the testimony of two witnesses in a pending criminal prosecution for a monetary consideration; United States v. Solow, 138 F.Supp. 812 (S.D.N.Y.1956), involving the destruction of correspondence to prevent their production before a pending grand jury; Falk v. United States, 370 F.2d 472 (9th Cir. 1966), involving the endeavor to influence a prospective witness to give false testimony in a civil action in federal district court; United States v. Alo, 439 F.2d 751 (2d Cir. 1971), involving conduct of a defendant in the deliberate withholding of his testimony before SEC investigative hearings; United States v. Cohn, 452 F.2d 881 (2d Cir. 1971), involving a defendant's concealment of relevant information from a Grand Jury;

United States v. Rosner, 352 F.Supp. 915 (S.D.N.Y.1972), involving payment of a police bribe for information concerning various criminal matters pending before the district court and its Grand Jury.

An examination of the above cases shows that the obstruction of justice as contemplated by the statute involves behavior far removed in context from the conduct of defendant James Knife as set out in the indictment. While his threat could perhaps be considered an assault, his behavior could in no way be brought under 18 U.S.C. Sec. 1503 as an interference with a pending judicial proceeding. All of the named cases involved behavior which was aimed at interfering in some way with a procedure which occurred or was occurring or was about to occur in a judicial proceeding, be it in court, before a Grand Jury, or before an administrative hearing. James Knife's expansive threat to the policeman, whom he knew well, to let Knife's friend Ted Standing Cloud out of jail "or else" can in no way be considered as such an endeavor to interfere with judicial functions. Had Knife attempted to influence Deuchar's *testimony* as a potential witness in a trial of Standing Cloud by his threat, a different situation would be presented. Another situation would also exist if he had interfered with the *investigation* of the crime for which Standing Cloud had been arrested.

The government contends there are two distinct clauses in Sec. 1503; the first, protecting the participants in a specific judicial proceeding; and the second, preventing a miscarriage of justice by corrupt methods in a pending federal case. United States v. Metcalf, 435 F.2d 754, 756 (9th Cir. 1970); Catrino v. United States, *supra*, 176 F.2d at 887; Samples v. United States, 121 F.2d 263, 265 (5th Cir. 1941). With this contention, I agree. However, I further conclude that the statute must be strictly construed, and under the doctrine of *ejusdem generis*, "the general words which follow the specific words in the enumeration of prohibited acts in the section here involved must be construed to embrace only acts *similar in nature* to those acts enumerated by the preceding specific words." (emphasis added) Haili v. United States, *supra*, 260 F.2d at 746. The Ninth Circuit in *Haili* reversed the conviction under Sec. 1503 of a defendant whose conduct had consisted of associating regularly with a woman who, by the terms of her probation, was prohibited from having anything to do with him. In explaining the limitations which the court felt should prevail on a strictly construed criminal statute, Circuit Judge Pope declared

. . . in a general way, it can be said that the supervision of a convicted prisoner in a penitentiary is a part of the administration of justice if that term is given a very wide meaning. We would be surprised, however, if it were held that conduct designed to encourage a prisoner to escape from a penitentiary could be punished under § 1503. *Haili, supra* at 745, 746.

The conduct of James Knife certainly falls into the above pattern and this Court agrees with the Ninth Circuit that such conduct does not fall within the perimeters of Sec. 1503. The Ninth Circuit reaffirmed their decision in *Haili* in the recent case of United States v. Ryan, 455 F.2d 728 (9th Cir. 1972), and the Eighth Circuit Court of Appeals cited *Haili* for its application of the *ejusdem generis* doctrine in United States v. Freeman, 473 F.2d 7 (8th Cir. 1973), a case concerning 18 U.S.C. Sec. 2314, the National Stolen Property Act.

Even if, as the government contends should be the case, *ejusdem generis* were not applied to the second clause of the statute, I fail to see how James Knife's conduct could come within the language of Sec. 1503. United States v. Rosner, *supra*, and Falk v. United States, *supra*, two cases cited by the government as propounding a very broad interpretation of Sec. 1503 ("It embraces the widest variety of conduct that impedes the judicial process"), *Rosner*, 352 F.Supp. at 919, and "Sec. 1503 is a broad 'catchall' phrase", Falk, 370 F.2d at 476, both

dealt with behavior designed to directly influence and disrupt either Grand Jury or district court proceedings. It is a broad interpretation of *that* type of behavior which is to be included within the statute, not actions as far removed from a judicial setting as those of defendant Knife.

James Knife's behavior could only be said to obstruct justice in the most circuitous manner, and to include such behavior within Sec. 1503 would raise grave constitutional problems. In Anderson v. United States, 215 F.2d 84 (6th Cir. 1954), 18 U.S.C. Sec. 1503 was upheld as not being unconstitutionally vague. The court there cited the U.S. Supreme Court's decision of United States v. Harriss, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954), for the principle that an Act of Congress should be so construed as to uphold its constitutionality rather than to strike it down as invalid because of vagueness. *Id.* 215 F.2d at 90. If James Knife's actions were included as a marginal offense falling within Sec. 1503, I fear the vagueness test—that is, whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices —would not be met. Anderson, *supra* at 90, citing Jordan v. DeGeorge, 341 U.S. 223, 232, 71 S.Ct. 703, 95 L.Ed. 886 (1951).

If the government is relying on the initial, and more specific clause of Sec. 1503, it also would not apply here. In this regard, I feel the case of Hodgdon v. United States, 365 F.2d 679 (8th Cir. 1966), cited by the government in its brief, deserves mention. In that case, defendant had been convicted under the first clause of Sec. 1503 of endeavoring by threats and force to intimidate a United States Commissioner, where defendant entered the office of the Commissioner, removed a pistol from his (defendant's) belt, placed the pistol on the Commissioner's desk and expressed his disapproval of the handling of a past matter by the Commissioner.

The government finds it significant that the commissioner had no further duties or responsibilities in regard to said matter, a similar position, they say, as that held by Police Chief Deuchar. The two positions are not analogous. While it is true there were no pending matters before the Commissioner which the defendant in *Hodgdon* was trying to influence by his intimidating actions, the Commissioner was undeniably an officer of the federal court, which cannot be said of Mission Police Chief Deuchar. There was no discussion in the case on the "discharge of duty" question, but I think it fair to say that a *federal* court officer in his daily work would always be assumed to be in the discharge of his federal duty, whereas such an assumption could not be made of a *local* police officer whose only federal duty in this case was to make an arrest on behalf of federal officers, and whose duty ended immediately after he gave up custody of his prisoner. At the time he was threatened, Police Chief Deuchar had already turned over custody of Standing Cloud, had no remaining duties concerning him, and could not possibly have released the prisoner as demanded by Knife. In plain language, James Knife, by his indicted actions, could not have obstructed justice in the case of Theodore Willis Standing Cloud even if he had wanted to do so.

This court concludes that the acts of James Knife in the instant case could have had no possible bearing on the fairness of any trial in the Standing Cloud case. His actions could in no way have influenced the outcome of a trial of Standing Cloud, such influence being the gravaman of cases involving the obstruction of justice. The arrest of judgment is hereby granted and an order shall be prepared for my signature by counsel for the defendant.