UNITED STATES of America,
Plaintiff–Appellee,

v.

Ronald FULBRIGHT, Defendant–
Appellant.

No. 94–30346.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 17, 1995.

Opinion Filed Nov. 8, 1995.

Order Amending Opinion
filed Dec. 29, 1995.

Opinion Withdrawn Jan. 22, 1997.

Decided Jan. 22, 1997.

Daniel Donovan, Assistant Federal Defender, Great Falls, MT, for defendant-appellant.

Robert J. Brooks, Assistant United States Attorney, Butte, MT, for plaintiff-appellee.

Before: FARRIS, NOONAN, and HAWKINS, Circuit Judges.

## ORDER

The Opinion filed November 8, 1995 and amended December 29, 1995 is withdrawn.

## OPINION

MICHAEL DALY HAWKINS, Circuit Judge:

This appeal deals with a dangerous intersection in a free society, one at which the expression of discontent or disagreement with the actions of government can collide with legitimate efforts to deal with actions intended to threaten or impede federal officials in the carrying out of their duties.

Defendant-appellant Ronald Fulbright ("Fulbright") is a Montana farmer who experienced some financial reverses. When his creditors sought foreclosure, he sought bankruptcy protection. When these efforts failed, Fulbright mailed a series of documents to United States Bankruptcy Judge John Peterson. Among the documents mailed by Fulbright was a "Notice and Demand for Declaration of Judge's Impartiality" and a "Citizens' Arrest Warrant for Citizens' Arrest." The notice "charged" Judge Peterson with numerous "crimes," including sedition, high treason, bank fraud, and armed robbery. The "warrant" purportedly authorized peace officers to somehow arrest Judge Peterson. Before Fulbright mailed either of these documents, Judge Peterson recused himself from further participation in Fulbright's bankruptcy matters. On April 16, 1993, shortly after the recusal, Fulbright mailed the "Notice" to Judge Peterson. Several weeks later, on June 2, 1993, Fulbright filed the "Warrant" in bankruptcy court. On May 10, 1993, after the "Notice" was mailed but before the "Warrant" was filed, Fulbright's bankruptcy case was dismissed.

Fulbright was indicted for conspiracy to impede or injure federal officers under 18 U.S.C. § 372 (Count I) and for obstruction of justice by intimidating or injuring federal officers (Count II), and aiding and abetting the obstruction of justice (Count III), in violation of 18 U.S.C. § 1503. At his jury trial, Fulbright took the stand in his own defense, admitted the mailings, but claimed that he had not intended to intimidate or harass Judge Peterson: "I was just trying to get a farm foreclosure action hopefully remedied." Fulbright was convicted and later sentenced to a 27–month prison term, and a 3–year period of supervised release.

Fulbright appeals, claiming a series of errors in the conduct of his trial and the calculation of his sentence. We have jurisdiction under 28 U.S.C. § 1291. We affirm in part, reverse in part and remand.

## I. JURY INSTRUCTIONS

### A. *The Jewell Instruction*

■ In its jury instructions, the district court gave the "deliberate ignorance" instruction derived from *United States v. Jewell*, 532 F.2d 697, 700 (9th Cir.) (en banc), *cert. denied*, 426 U.S. 951, 96 S.Ct. 3173, 49

L.Ed.2d 1188 (1976), known as the *Jewell* instruction.[1] We review the propriety of the *Jewell* instruction de novo. *United States v. Asuncion*, 973 F.2d 769, 772 (9th Cir.1992). A *Jewell* instruction is appropriate if the evidence supports an inference that the defendant deliberately avoided obtaining knowledge that renders his conduct illegal. *United States v. Alvarado*, 838 F.2d 311, 314 (9th Cir.), *cert. denied*, 488 U.S. 838, 109 S.Ct. 103, 102 L.Ed.2d 78 (1988); *see also United States v. Sanchez–Robles*, 927 F.2d 1070, 1075 (9th Cir.1991).

■ During its cross-examination of Fulbright, the government focused on Fulbright's legal research experience and use of *Black's Law Dictionary* to find legal definitions. This evidence, the government argues, demonstrates that Fulbright was aware of a high probability that his conduct was illegal. Even if knowledge of illegality had been an element of the crime, however, this evidence would have been insufficient to give rise to an inference of deliberate ignorance. To justify a *Jewell* instruction in such circumstances, the government must show more than a few forays into a law library by a layman. Deliberate ignorance (sometimes referred to as willful blindness) may be found only "where it can almost be said that the defendant actually knew." *Jewell*, 532 F.2d at 704 (quoting G. Williams, *Criminal Law: The General Part*, § 57 at 159 (2d ed.1961)). Since the evidence showed, at most, reckless avoidance of knowledge by Fulbright, the district court's *Jewell* instruction would have been improper even if Fulbright's knowledge of the illegality of his conduct had been relevant. *See Alvarado*, 838 F.2d at 314; *United States v. Pacific Hide & Fur Depot, Inc.*, 768 F.2d 1096, 1098 (9th Cir.1985).

■ The error, however, was harmless. In the context of this case, the *Jewell* instruction essentially allowed the jury to con-clude that Fulbright was not ignorant of the law. Since ignorance of the law is not a defense, *Lambert v. California*, 355 U.S. 225, 228, 78 S.Ct. 240, 242–43, 2 L.Ed.2d 228 (1957), there was no harm in instructing the jury that Fulbright knew or recklessly avoided knowing the law.

**B.** *The **Pinkerton** Instruction*

The district court also made a mistake in its instruction regarding the so-called *Pinkerton* rule, concerning vicarious liability among co-conspirators.[2] After explaining that each member of a conspiracy can be punished for the crimes of the other members committed during and in furtherance of the conspiracy, the court stated: "Therefore, you may find the defendant guilty of *conspiracy as charged in count I* of the superseding indictment if the government has proved each of the following elements beyond a reasonable doubt...." The underscored language should instead have been, "obstruction of justice as charged in counts II and III." Both parties acknowledge that an error was made, but they disagree about the consequences of that mistake.

**1.** *Is "plain error" the appropriate standard of review?*

■ During the discussion regarding the instructions, Fulbright's counsel clearly objected to the error, and both the court and the prosecutor agreed that the language should be changed. For some reason, however, the court did not correct the error before charging the jury. Since the court had previously agreed to correct the instruction, it was incumbent on the defense to call the error to the court's attention. Had Fulbright's counsel alerted the district court of its oversight, it is apparent the court would have corrected its mistake. Because Fulbright failed to raise a contemporaneous ob-

---

1. The instruction reads:
 You may find that a defendant acted knowingly if you find beyond a reasonable doubt that a defendant was aware of a high probability that the acts were criminal and deliberately avoided learning the truth. You may not find such knowledge, however, if you find that a defendant believed his acts were lawful, or if you find that a defendant was simply careless.

2. In *Pinkerton v. United States*, 328 U.S. 640, 646–47, 66 S.Ct. 1180, 1183–84, 90 L.Ed. 1489 (1946), the Supreme Court held that a member of a conspiracy may be held liable for the substantive crimes committed by his co-conspirator in furtherance of the conspiracy.

jection, we review the instruction for plain error. *United States v. Fagan,* 996 F.2d 1009, 1016 (9th Cir.1993); *see* Fed.R.Crim.P. 52(b).

### 2. *Is the instruction plainly erroneous?*

■ Fulbright argues that the court's error allowed him to be convicted of conspiracy if the jury determined that he or one of his co-defendants committed the underlying offense of obstruction of justice. According to Fulbright, this error permitted the jury to convict him without considering the elements of conspiracy, mandating a new trial. Fulbright is incorrect. The instruction was intended to inform the jury that Fulbright could be convicted of obstructing justice if his co-conspirators committed that crime in furtherance of the conspiracy. Instead, the judge told the jury that Fulbright could be convicted of conspiracy as charged in Count I if one of his co-defendants committed the crime of obstruction of justice (the crime underlying the conspiracy). However, in the erroneous instruction, the district court went on to state that the government must prove, beyond a reasonable doubt, that Fulbright "was a member of the same conspiracy at the time one of the offenses charged in count II or count III was committed." In essence, then, the district court instructed the jury that Fulbright could be convicted of conspiracy if he was guilty of conspiracy. This logic, while circular, is not plainly erroneous and does not omit an element of the offense. To determine whether Fulbright was "a member of the ... conspiracy" as required by the erroneous instruction, the jury had to look to the elements of conspiracy set forth in the correct conspiracy instruction. Though somewhat confusing, the incorrect *Pinkerton* instruction was not plainly erroneous.

## II. SUFFICIENCY OF THE EVIDENCE

Fulbright argues that there was insufficient evidence to sustain his convictions. There is sufficient evidence to support a conviction if, reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307,

319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Lennick,* 18 F.3d 814, 819 (9th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 162, 130 L.Ed.2d 100 (1994).

### A. *Count I—Conspiracy*

■ Fulbright correctly notes that the government did not present direct evidence of a conspiratorial agreement between himself and his co-defendants. However, the existence of an agreement may be inferred from circumstantial evidence. *United States v. Krasovich,* 819 F.2d 253, 255 (9th Cir.1987). *See also United States v. Castro,* 972 F.2d 1107, 1110 (9th Cir.1992) ("The government does not have to present *direct* evidence. Circumstantial evidence and the inferences drawn from that evidence will sustain a conspiracy conviction."), *cert. denied,* 507 U.S. 944, 113 S.Ct. 1350, 122 L.Ed.2d 731 (1993); *United States v. Calabrese,* 825 F.2d 1342, 1348 (9th Cir.1987) ("[A] defendant's knowledge of and participation in a conspiracy may be inferred from circumstantial evidence and from evidence of the defendant's actions.").

■ Fulbright and his co-defendants mailed substantially identical arrest warrants to the bankruptcy judges, and Fulbright provided the UCC–1 forms that his co-defendants attempted to file. "The coordinated actions of the codefendants are strong circumstantial evidence of an agreement. The likelihood that these actions were not driven by an agreement is extremely remote." *United States v. Hernandez,* 876 F.2d 774, 778 (9th Cir.), *cert. denied,* 493 U.S. 863, 110 S.Ct. 179, 107 L.Ed.2d 135 (1989). The jury could reasonably infer from the defendants' concerted action that "all the parties [were] working together understandingly, with a single design for the accomplishment of a common purpose." *United States v. Cloud,* 872 F.2d 846, 852 (9th Cir.), *cert. denied,* 493 U.S. 1002, 110 S.Ct. 561, 107 L.Ed.2d 556 (1989) (quoting *United States v. Monroe,* 552 F.2d 860, 862–63 (9th Cir.), *cert. denied,* 431 U.S. 972, 97 S.Ct. 2936, 53 L.Ed.2d 1069 (1977)). The evidence is sufficient to support the conspiracy conviction.

### B. *Count II—Obstruction of Justice*

In his petition for rehearing, Fulbright advances two arguments why the timing of his mailings to Judge Peterson precludes his conviction, under Count II, for obstruction of justice in violation of 18 U.S.C. § 1503. First, he contends that because Judge Peterson had recused himself before Fulbright sent either the "Notice" or the "Warrant," Judge Peterson was not acting "in the discharge of his duties" at that time. Second, he argues that there was no "proceeding" pending at the time Fulbright filed the "Warrant," since his bankruptcy case had already been dismissed.

### 1. The "discharge of duty" element

 Count II contained three separate allegations: Fulbright and others (1) endeavored to influence and intimidate Judge Peterson "in the discharge of his duties;" (2) knowingly injured Judge Peterson on account of his performance of his official duties; and (3) tried to obstruct the due administration of justice in connection with his "bankruptcy proceeding ... then pending." These three allegations correspond to the three types of conduct 18 U.S.C. § 1503 prohibits. Where a statute enumerates several means of committing an offense, an indictment may contain several allegations in the conjunctive. *United States v. Miller*, 471 U.S. 130, 136, 105 S.Ct. 1811, 1815, 85 L.Ed.2d 99 (1985).

One of the government's three alternative theories under Count II was that Fulbright violated 18 U.S.C. § 1503 by endeavoring to influence or impede Judge Peterson "in the discharge of his duties." Conviction under that theory required the government to prove that Judge Peterson was engaged in the "discharge of his duties." 18 U.S.C. § 1503.

 Although few courts have construed how § 1503 defines a judge's duties,[3] cases construing the duties of analogous officials

suggest that Judge Peterson was engaged in the discharge of his duties when Fulbright sent the "Notice" and "Warrant," even though Judge Peterson had already recused himself from Fulbright's bankruptcy case. In *Hodgdon v. United States*, 365 F.2d 679 (8th Cir.1966), *cert. denied*, 385 U.S. 1029, 87 S.Ct. 759, 17 L.Ed.2d 676 (1967), for example, the Eighth Circuit affirmed a conviction for obstruction of justice where a defendant, displeased with a United States Commissioner's past handling of a tax case in which the defendant was not involved, appeared in the Commissioner's office, complained about his handling of the tax case, then placed a pistol on the Commissioner's desk. Although *Hodgdon* did not address the meaning of "discharge of duty," another court discussing that case noted that, while the Commissioner in *Hodgdon* "had no further duties or responsibilities" in regard to the tax matter, he nevertheless could be said to be engaged in the discharge of his official duties. *United States v. Knife*, 371 F.Supp. 1345, 1348 (D.S.D.1974) (discussing *Hodgdon*). The court in *Knife* explained that "a federal court officer in his daily work would always be assumed to be in the discharge of his federal duty...." *Knife*, 371 F.Supp. at 1348; *see also United States v. Fernandez*, 837 F.2d 1031 (11th Cir.), *cert. denied*, 488 U.S. 838, 109 S.Ct. 102, 102 L.Ed.2d 78 (1988) (dicta rejecting defendant's contention that prosecution, to prove endeavor to intimidate official in "discharge of his dut[ies]," must establish that official was performing those duties in the context of a pending judicial proceeding).

Although Judge Peterson had recused himself from Fulbright's case before Fulbright sent the "Notice" and "Warrant," we conclude that the judge was nevertheless engaged in the discharge of his duties. Although he was no longer involved in the adjudication of Fulbright's case, Judge Peterson was still involved in adjudicating other cases, and was therefore discharging his offi-

---

**3.** Most cases construing the phrase "discharge of duty" involve the "duties" of witnesses or jurors. In such contexts, "discharge of duty" is fairly broadly construed. *See, for example, United States v. Jackson*, 513 F.2d 456 (D.C.Cir.1975) (although both prosecution and defense had rest-

ed, witness threatened by criminal defendant was still considered to be a witness engaged in the discharge of his duties because the trial was not yet over and the court retained the power to recall witness to testify).

cial duties as a United States bankruptcy judge. The danger of Fulbright's "Notice" and "Warrant" lay in their potential to intimidate Judge Peterson and to dissuade him from the zealous execution of his ongoing official duties. We therefore reject Fulbright's first challenge to his conviction under Count II.

### 2. The "judicial proceeding" element

It is well-settled that conviction under *any* portion of 18 U.S.C. § 1503 requires the government to prove the existence of a judicial "proceeding." *Pettibone v. United States,* 148 U.S. 197, 205–06, 13 S.Ct. 542, 546, 37 L.Ed. 419 (1893) (interpreting predecessor statute to 18 U.S.C. § 1503); *see also United States v. Mullins,* 22 F.3d 1365, 1370 (6th Cir.1994); *United States v. Van Engel,* 15 F.3d 623, 627 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2163, 128 L.Ed.2d 886 (1994); *United States v. Vesich,* 724 F.2d 451, 454 (5th Cir.1984). The trial court in this case properly instructed the jury that to convict under any of the government's three theories, it must find that "there existed a proceeding before a Federal District Court or a Federal Bankruptcy Court," although it nowhere defined the term "proceeding."

Courts have construed the "proceeding" element fairly strictly. Although most cases interpret the term "proceeding" in the context of a defendant's pre-trial conduct,[4] a few cases address post-trial conduct. In one such case, a criminal action was deemed "pending" until "disposition is made of any direct appeal taken by the defendant assigning error that could result in a new trial." *United States v. Johnson,* 605 F.2d 729, 731 (4th Cir.1979) (affirming conviction of defendant who, after he was convicted at trial but while his appeal was still pending, tried to induce the key witness who had testified against him to recant his testimony), *cert. denied,* 444 U.S. 1020, 100 S.Ct. 677, 62 L.Ed.2d 652 (1980).

In this case, the "proceeding" in question was Fulbright's bankruptcy case. The order dismissing that case was filed May 10, 1993. Although Fulbright could have appealed that dismissal order, under Federal Rule of Bankruptcy Procedure 8002, he had only ten days from the date of that order to do so. *See* Fed.R.Bankr.P. 8002 ("[t]he notice of appeal [from a bankruptcy] shall be filed with the clerk within 10 days of the date of the entry of judgment, order, or decree appealed from."). We have construed the ten-day bankruptcy appeal period as a strict jurisdictional limit. *See In re Souza,* 795 F.2d 855 (9th Cir.1986). We conclude that Fulbright's bankruptcy "proceeding" terminated with the lapse of the ten-day appeal period following the May 10, 1993 order dismissing his bankruptcy case.

Because Fulbright's bankruptcy proceeding ended around May 20, 1993, we conclude that the jury could not, as a matter of law, have convicted Fulbright for obstruction of justice on the basis of the "Arrest Warrant," since Fulbright sent the "Warrant" to Judge Peterson in early June, *after* the "proceeding" element had been eliminated. Although the jury could have convicted Fulbright on the basis of the "Notice," which he sent before his bankruptcy case was dismissed, the dilemma in this case is that the jury instructions permitted the jury to convict Fulbright on the basis of *either* the "Warrant" *or* the "Notice." As noted above, Count II contained three separate allegations: Fulbright and others (1) endeavored, "by threatening letters and communications," to influence and intimidate Judge Peterson "in the discharge of his duties;" (2) knowingly injured Judge Peterson on account of his performance of his official duties; and (3) by "a threatening letter and communication," tried to obstruct the due administration of justice in connection with his "bankruptcy proceeding ... then pending." The district court instructed the jury that it could convict under *any one* of the three allegations, provided the jurors agreed unanimously.

---

4. These cases hold that a proceeding exists only where there is a "judicial or grand jury proceeding." *United States v. Aguilar,* —— U.S. ——, ——, 115 S.Ct. 2357, 2362, 132 L.Ed.2d 520 (1995). "Ancillary" proceedings, such as an FBI investigation, independent of a court's or a grand jury's authority, do not satisfy § 1503's "proceeding" requirement. *Id.*

Where a jury returns a general verdict that is potentially based on a theory that was *legally impermissible* or *unconstitutional*, the conviction cannot be sustained. *Griffin v. United States*, 502 U.S. 46, 56, 112 S.Ct. 466, 472, 116 L.Ed.2d 371 (1991) (*citing Yates v. United States*, 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957) (conviction reversed where one of the possible grounds for conviction was illegal); and *Stromberg v. California*, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931) (conviction reversed where one of the alternative theories from which jury chose was unconstitutional)). The rationale for this principle is that jurors, as non-lawyers, cannot be expected to eliminate the legally impermissible option.[5]

We recently applied this principle in a case which arose under a different criminal statute but which raised a similar problem of a legally impermissible jury choice. *United States v. Barona*, 56 F.3d 1087 (9th Cir. 1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 814, 133 L.Ed.2d 759 (1996). In *Barona*, several defendants were convicted of drug-related offenses, and two of the defendants were also convicted of being "administrators, leaders, or organizers" of a "continuing criminal enterprise" in violation of 21 U.S.C. § 848. Conviction for the "continuing criminal enterprise" offense requires that a defendant supervise five or more "supervisees." *Barona*, 56 F.3d at 1096–97. The prosecutors in *Barona* submitted to the jury a list of individuals, allowing the jury to select those individuals it concluded met the definition of "supervisee." On that list was at least one person whom the government conceded could not, as a matter of law, qualify as a "supervisee." The court did not define "supervisee" for the jury. On appeal, we reversed the "continuing criminal enterprise" conviction because the list from which the jury was asked to select the requisite five "supervisees" contained a choice that was legally invalid. *Id.* at 1098.

In Fulbright's case, the court never defined the term "proceeding" for the jury, but simply required that to convict under any one of the government's three theories, the jury must find that there was a "proceeding" pending in the bankruptcy court or district court. Because the instructions allowed the jury to convict on the basis of a piece of evidence (the "Warrant") that precluded, as a matter of law, the existence of the "proceeding" element, we conclude that the jury instructions permitted the jury to choose a basis for conviction that was legally impermissible. Although the evidence would support a conviction on the basis of the "Notice," the jury may have convicted on the basis of the "Warrant" rather than the "Notice." Because we have no way to ascertain the factual basis on which the jury convicted Fulbright, his conviction under Count II cannot stand. We therefore vacate Fulbright's conviction under Count II.

### C. Count III—Aiding and Abetting Obstruction of Justice

While acknowledging that co-defendant Haskins's acquittal of the principal offense charged in Count III does not preclude his conviction of aiding and abetting, Fulbright argues that his conviction should be reversed because the government failed to prove that *anyone* committed the principal offense.

The government responds simply by saying that "there was a great deal of proof the principal offense was committed." But from the midst of all that proof, the government can extract only one concrete example: "Mr. Haskins aided and directed Mr. Coleman to file substantially identical papers to those in his own bankruptcy. Mr. Coleman purchased those papers from Mr. Fulbright." Even viewed in the government's favor, this evidence does not amount to sufficient proof that Fulbright aided and abetted Haskins or anyone else to obstruct the administration of justice in Haskins's bankruptcy. At best, the

---

**5.** In contrast, a reviewing court may uphold a general verdict if there was sufficient evidence on at least one of the submitted grounds for conviction, even if there was insufficient evidence to sustain the other theories of the case. *Griffin*, 502 U.S. at 56–57, 112 S.Ct. at 472–73

(*citing Turner v. United States*, 396 U.S. 398, 420, 90 S.Ct. 642, 654, 24 L.Ed.2d 610 (1970)). In such instances, the court presumes that the jury, as fact-finder, reached its verdict on the basis of the correct evidence.

evidence shows that Fulbright aided Coleman, who was also aided by Haskins, to file papers in *Coleman's* bankruptcy. This is not the principal offense charged in Count III.

To sustain an aiding and abetting conviction, this court "require[s] evidence showing that a principal offense has been committed—including requiring evidence that some principal had the requisite intent." *United States v. Powell,* 806 F.2d 1421, 1424 (9th Cir.1986). Because there is no evidence that Fulbright, Coleman, or anyone else had the specific intent to obstruct justice in Haskins's bankruptcy proceeding, we reverse Fulbright's conviction on Count III.

### III. CONSTITUTIONAL ISSUES

██ A constitutional challenge to the district court's denial of a motion to dismiss is reviewed de novo. *United States v. Palmer,* 3 F.3d 300, 305 (9th Cir.1993), *cert. denied,* 510 U.S. 1138, 114 S.Ct. 1120, 127 L.Ed.2d 429 (1994).

#### A. *Redaction of the Indictment*

At the close of the government's case, Fulbright moved to dismiss Count II because the government presented no evidence regarding the allegation in the indictment that Fulbright had filed a UCC–1 financing statement that "falsely represented ... that Judge Peterson was indebted to [Fulbright]." Over a defense objection, the district court treated the motion as a motion to strike surplusage, and it deleted the language referring to the UCC–1 form from the indictment supplied to the jury. Fulbright argues that the court's redaction constituted an impermissible amendment of the indictment, in violation of the Fifth Amendment.

██ The district court's amendment was proper because it did not broaden the scope of the indictment, as it eliminated the UCC–1 form from consideration. *See United States v. Miller,* 471 U.S. 130, 138–40, 105 S.Ct. 1811, 1816–17, 85 L.Ed.2d 99 (1985) (holding that a trial court may amend an indictment, so long as the scope of the remaining charges is narrower than before). Although the remaining provisions might be somewhat less specific in that they only refer generically to "threatening letters and communications," the references were not so generic as to give the government a *carte blanche* to introduce any evidence whatsoever. The obstruction of justice charge in Count II did not depend solely on the unproven allegation that Fulbright filed a false UCC–1 form; it also alleged he attempted to injure or intimidate Judge Peterson by sending "threatening letters." Therefore, the indictment, even as redacted, satisfied the dual purpose of indictments: "[T]o apprise a defendant of the charge against which he must defend, and to enable him to plead double jeopardy." *United States v. Givens,* 767 F.2d 574, 584 (9th Cir.1985) (citing *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974)). Since the redacted indictment is not more broad than the original version, Fulbright has no complaint. The district court did not violate Fulbright's Fifth Amendment rights by striking the UCC–1 language from the indictment.

#### B. *Void for Vagueness*

██ Fulbright argues that the statutes under which he was convicted are unconstitutionally vague as applied to his conduct. He claims that the "mere filing of an official document (UCC forms) or the filing of a lawsuit can constitute 'force' or 'threat' or 'intimidation' within the meaning of the statute." However, it is the nature of these documents, not the simple act of filing them, that brings them within the statutes' purview. Filing a *false* UCC form, or issuing an *illegitimate* arrest warrant is prohibited—the statutes are not impermissibly vague as applied.

#### C. *Free Speech Violation*

██ Next Fulbright contends that the statutes are an over-broad content and viewpoint regulation in violation of the First Amendment. While conceding that the government has a legitimate interest in preventing the intimidation of public officials, Fulbright claims that the statutes are not narrowly tailored to serve that interest. This argument suffers from the same flaw as the previous one—it is not the filing of authorized court documents that is punishable, so no legitimate free speech interest is implicated. The district court properly denied Fulbright's motion to dismiss based on alleged constitutional violations.

## IV. SEARCH WARRANT

█ The issuance of a search warrant is reviewed for clear error. *United States v. Baldwin*, 987 F.2d 1432, 1435 (9th Cir.), *cert. denied*, 508 U.S. 967, 113 S.Ct. 2948, 124 L.Ed.2d 696 (1993); *United States v. Bertrand*, 926 F.2d 838, 841 (9th Cir.1991). This court must determine whether there was a "substantial basis" for concluding that the warrant was supported by probable cause. *United States v. Brown*, 951 F.2d 999, 1002 (9th Cir.1991). The magistrate making the original determination of probable cause is accorded significant deference by the reviewing court. *In re Grand Jury Subpoenas dated December 10, 1987*, 926 F.2d 847, 856 (9th Cir.1991); *United States v. McQuisten*, 795 F.2d 858, 861 (9th Cir.1986).

Fulbright argues that the supporting affidavit for the warrants in this case did not give rise to probable cause, doing no more than to recite the facts set forth in the indictment. He also claims that the scope of the search authorized by the warrant was too broad. The warrant for "any and all" records related to "We The People" was too broad. "We The People" was not shown to be a pervasively criminal organization. *United States v. Kow*, 58 F.3d 423, 427 (9th Cir.1995). We sever this portion from the otherwise valid portion of the warrant. *United States v. Gomez–Soto*, 723 F.2d 649, 654 (9th Cir.), *cert. denied*, 466 U.S. 977, 104 S.Ct. 2360, 80 L.Ed.2d 831 (1984). On this appeal, Fulbright has not shown that his trial was affected by any record produced by the invalid portion of the warrant. We, therefore, uphold the conviction.

## V. SENTENCING

█ Fulbright contends that the district court applied the wrong section of the Sentencing Guidelines in calculating his sentence. The application of a particular sentencing guideline to a specific set of facts is reviewed de novo. *United States v. Hanson*, 2 F.3d 942, 947 (9th Cir.1993).

█ Following the Statutory Index to the Sentencing Guidelines, the district court used U.S.S.G. § 2J1.2 to calculate Fulbright's sentence. Fulbright argues that the court should have used U.S.S.G. § 2A2.4—the guideline dealing with obstructing or imped-

ing federal officers—which would have resulted in a base offense level of 6. We agree.

The guidelines cross-referenced in the Statutory Index are not mandatory. "If, in an atypical case, the guideline section indicated for the statute of conviction is inappropriate because of the particular conduct involved, [the court should] use the guideline section most applicable to the nature of the offense conduct charged in the count of which the defendant was convicted." U.S.S.G. Appendix A. *See also* U.S.S.G. § 1B1.2, comment (n.1).

We hold that Fulbright's conduct was more analogous to impeding a federal officer than to obstructing justice, so we remand the case for resentencing under U.S.S.G. § 2A2.4.

### CONCLUSION

Fulbright's conviction on Count I is affirmed, on Count II is vacated, and on Count III is reversed. We remand for resentencing under U.S.S.G. § 2A2.4.

AFFIRMED IN PART, VACATED IN PART, REVERSED IN PART AND REMANDED.