UNITED STATES of America,
Plaintiff–Appellee,

v.

Johannes WEBER, Defendant–
Appellant.

No. 01–30419.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 7, 2003.

Filed March 3, 2003.

John A. Drennan, Department of Justice, Washington, DC, for the plaintiff-appellee.

Thomas Burke Wonnell, Anchorage, AK, for the defendant-appellant.

Before WALLACE, TROTT and TASHIMA, Circuit Judges.

## OPINION

TROTT, Circuit Judge.

Johannes Weber ("Weber") appeals his jury conviction and sentence for obstruction of justice, in violation of 18 U.S.C. § 1503 (" § 1503"). Weber argues (1) that a judicial proceeding was not pending at the time he left a voice mail message threatening to murder a federal district judge; (2) the government did not present sufficient evidence for the jury to find that Weber had the requisite intent to obstruct justice or that his threat bore a sufficient relationship to a pending judicial proceeding; and (3) the district court erred by sentencing Weber under U.S.S.G. § 2J1.2, concerning obstruction of justice, rather than U.S.S.G. § 2A2.4, concerning impeding a federal officer. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## BACKGROUND

On October 4, 1995, Chief United States District Court Judge James K. Singleton ("Judge Singleton") for the District of Alaska sentenced Weber to thirty-three months incarceration followed by three-years of supervised release for his conviction for wire fraud, in *United States v. Weber*, A95–0032–CR (JKS) ("*Weber I* "). As part of Weber's supervised release, Judge Singleton required him to report to the United States Probation Office ("USPO") in the district where the Federal Bureau of Prisons ("BOP") released him within seventy-two hours of being released. Assistant United States Attorney Mark Rosenbaum ("Rosenbaum") was assigned to *Weber I*.

On August 15, 1997, BOP released Weber. Weber did not report to the USPO and fled the country. On August 25, 1997, in response to a petition filed by the USPO requesting revocation of Weber's supervised release, Judge Singleton issued an arrest warrant for Weber in connection with *Weber I*.

Weber traveled internationally after his 1997 release. During his travels, Weber telephoned Secret Service Agent Frank Powers ("Powers"),[1] the arresting officer

---

1. Powers began working with the International Criminal Police Organization ("Interpol")

in *Weber I*, between twenty and forty times. Weber also telephoned the District of Alaska USPO and spoke with Probation Officer Daniel Fynes ("Fynes") approximately twelve times. Powers and Fynes discussed the outstanding arrest warrant with Weber during their telephone conversations. Moreover, Weber left voice mail messages for Powers and Fynes. For example, in December 2000, Weber left a voice mail message for Fynes that stated he had entered a new plea agreement with Rosenbaum that called for Judge Singleton to perform oral sex on him.

In December 2000, Interpol officers in London issued a Blue Notice concerning Weber because of Weber's credit card fraud activities in the United Kingdom. A Blue Notice is a request pursuant to which Interpol member countries stop a suspect traveling through their country to obtain information about the suspect. A Blue Notice impedes a suspect's travel. Subsequently on February 10, 2001, Weber left the following voice mail message for Fynes, which is the basis for his conviction:

> Hey, Dan, Johannes here—Johannes Weber, probationer. We got some real problems here with Interpol. We got some real problems workin' out Frank Powers' because he works with Interpol. You listen to what I'm saying. Somebody obstructed justice in my case. Frank Powers sent in information internationally across from London. We got some real problems here. He obstructed justice in my case. We—we really gotta sit down and we gotta talk about this with Mark Rosenbaum—Mark Rosenbaum.
>
> I'll tell ya' what, man. I—I'm gonna be honest with you, man—I—I'm serious. This has just gone too far. Frank Powers has took this shit too far.

> Before I was arrested, I knew Frank Powers wanted me to cooperate with the government. I refused to do it. This shit has gone too far. He released information to London. And I'll tell ya' what I'm gonna fuckin' do. I'm gonna blow up the god damn fuckin' embassy in fuckin' Holland, unless you guys take a little fuckin' notice of what's fuckin' goin' on here. I'm serious. I'm fuckin' pissed off. Fuckin'—really fuckin' mad. You little scum bags better fuckin' take notice of what I'm doin'. You son-of-a-bitch, you get a hold of Mark Rosenbaum up there, and find out what the fuck's goin' on with fuckin' Frank Powers, otherwise I'm gonna shoot a fuckin' federal judge right in the fuckin' head. You understand that, son-of-a-bitch? I'll take fuckin' Singleton out with a high powered Russian rifle. You understand? We're gonna fuckin' find out the fuck is goin' on here. What the fuck is goin' on overseas. What the fuck is goin' on—I'm gonna take him out with a high—a high powered rifle, the fuckin' bastard.

On February 22, 2001, a grand jury sitting in the District of Alaska indicted Weber on one count of threatening an act of terrorism, in violation of 18 U.S.C. § 2332(a)(2), and one count of obstructing justice in *Weber I*, in violation of § 1503. Pursuant to the arrest warrant issued by Judge Singleton, Weber was arrested and then extradited from New Zealand and transferred to the United States Marshal's Service on March 15, 2001. The Marshal's Service then transferred him to the District of Alaska to appear in court. The government dismissed the threatening an act of terrorism charge. After a two-day trial, conducted by Judge Holland, a jury

section of the United States Crime Bureau in 1999, and relocated from Alaska to Washington, D.C. Interpol is an organization of 177 member countries who share criminal information with each other.

convicted Weber of obstructing justice. The district court sentenced Weber to eighty-four months incarceration, followed by three years of supervised release, and a consecutive term of twenty-four months incarceration for violating the terms of his *Weber I* supervised release.

## DISCUSSION

18 U.S.C. § 1503 provides, in relevant part:

> Whoever ... corruptly or by threats or force, or by any threatening letter or communication ... endeavors to influence, obstruct, or impede, the due administration of justice, shall be punished as provided in subsection (b).

### A. Pending Judicial Proceeding

■ Whether a judicial proceeding is pending at the relevant time is a question of law subject to de novo review. *United States v. Gonzalez–Mares*, 752 F.2d 1485, 1490 (9th Cir.1985). "Obstruction of justice requires acts to thwart some aspect of the Government's judicial function." *United States v. Tham*, 960 F.2d 1391, 1400 (9th Cir.1991). Consequently, a defendant can only be convicted under § 1503 if there is a pending judicial proceeding. *United States v. Fleming*, 215 F.3d 930, 934–36 (9th Cir.2000) (holding that a proceeding is pending while on appeal even if the appeal is so frivolous that it would only end in an affirmance); *United States v. Fulbright*, 105 F.3d 443, 450 (9th Cir.1997) (holding that a judicial proceeding terminates when the deadline for filing a timely notice of appeal has passed).

■ We conclude on these facts that the USPO's petition to revoke Weber's supervised release in connection with *Weber I* and the issuance of a warrant for Weber's arrest constituted the revival of proceedings in that case that were then pending when Weber threatened to kill Judge Singleton. As this record demonstrates, the

issuance of the warrant resulted in Weber's return to court to answer the charges against him. Once in court, he was the subject of a revocation hearing as a result of which his supervised release in the underlying case was revoked. This proceeding is a sufficient predicate for Weber's conviction under § 1503. *See Johnson v. United States*, 529 U.S. 694, 700, 120 S.Ct. 1795, 146 L.Ed.2d 727 (2000) (sanctions imposed upon revocation of supervised release are part of the penalty for the initial offense); *see also United States v. Novak*, 217 F.3d 566, 571–73 (8th Cir.2000) (citation omitted) (finding there was a pending proceeding because the relevant conduct occurred within the time after sentencing for filing a request for reduction of sentence pursuant to Fed.R.Crim.P. 35(b)); *United States v. Collis*, 128 F.3d 313, 315–19 (6th Cir.1997) (affirming the defendant's § 1503 conviction for submitting a forged letter to the district court supporting leniency at the defendant's supervised release revocation hearing); *United States v. Barber*, 881 F.2d 345, 348–52 (7th Cir. 1989) (affirming the district court's revocation of the defendant's probation for violating § 1503 while on probation by sending several letters to the United States Attorney's Office and district court attempting to influence an unrelated sentencing proceeding).

### B. Sufficiency of the Evidence

■ We review claims of insufficient evidence de novo. *United States v. Carranza*, 289 F.3d 634, 641 (9th Cir.2002). There is sufficient evidence to support a conviction if, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Carranza*, 289 F.3d at 641–42. Because Weber did not move for

an acquittal, however, we review his sufficiency of the evidence claims only for plain error. *United States v. Timmins,* 301 F.3d 974, 983 (9th Cir.2002); *United States v. Vizcarra–Martinez,* 66 F.3d 1006, 1009–10 (9th Cir.1995).

Weber claims that his conviction is flawed because there is insufficient evidence to show that he had the requisite intent to obstruct justice and that his threat bore a sufficient relationship to a pending judicial proceeding. The Supreme Court has described the intent and relationship requirements as follows:

> The action taken by the accused must be with an intent to influence judicial or grand jury proceedings .... Some courts have phrased this showing as a "nexus" requirement—that the act must have a relationship in time, causation, or logic with the judicial proceedings.... In other words, the endeavor must have the " 'natural and probable effect' " of interfering with the due administration of justice.... This is not to say that the defendant's actions need be successful; an "endeavor" suffices.... [I]f the defendant lacks knowledge that his actions are likely to affect the judicial proceeding, he lacks the requisite intent to obstruct.

*United States v. Aguilar,* 515 U.S. 593, 599, 115 S.Ct. 2357, 132 L.Ed.2d 520 (1995) (internal citations omitted) (holding that uttering false statements to an investigating agent who might or might not testify before a grand jury is not sufficient for § 1503 liability); *see also United States v. Ryan,* 455 F.2d 728, 734–35 (9th Cir.1971) (holding that obstruction of justice requires that the defendant had the specific intent to impede the administration of justice, and the acts complained of bear a reasonable relationship to the subject of the pending judicial proceeding).

■ Based on the evidence before the jury, any rational trier of fact could con-

clude that Weber had the specific intent to thwart his arrest warrant and pending revocation proceeding, and that his threat had a "relationship in time, causation, or logic" with the issuance of the arrest warrant and pending revocation proceeding. Specifically, the government presented evidence that (1) Weber left a voice mail message threatening to murder the judge who sentenced him in *Weber I* and issued an arrest warrant for purposes of revoking his supervised release, (2) knew of the arrest warrant when he left the voice mail message, (3) referred to obstruction "in my case" in the voice mail message, (4) the voice mail message only discussed individuals associated with Weber by *Weber I,* and (5) the voice mail message was part of a pattern of communication between Weber and the individuals associated with him by *Weber I,* including his December 2000 message referring to a new plea agreement in his case. The threat also had the "natural and probable effect" of influencing the pending revocation proceeding because it could chill Judge Singleton's involvement with the proceeding for fear of his life. Accordingly, we hold that there was no plain error.

## C. Sentencing

■ We review a district court's application of a particular sentencing guideline to a specific set of facts de novo. *Fulbright,* 105 F.3d at 453. Weber argues that the district court erred by applying U.S.S.G. § 2J1.2 because Weber's conduct is more analogous to impeding a federal officer and not obstruction of justice, even though U.S.S.G. § 2J1.2 specifically applies to § 1503 convictions. Weber relies on our decision in *Fulbright,* where we held that sentencing guidelines cross-referenced in the statutory index are not mandatory, and in an atypical case the court should use the guideline section most

applicable to the nature of the offense conduct. *Id.* at 453.

 In *Fulbright*, we vacated the defendant's conviction for obstruction of justice and aiding and abetting the obstruction of justice in violation of § 1503, but affirmed the defendant's conviction for conspiracy to impede or injure a federal officer in violation of 18 U.S.C. § 372. *Id.* at 448–52. U.S.S.G. § 2J1.2, therefore, was not the most applicable guideline section. Here, a jury convicted Weber of obstructing justice not impeding a federal officer. Accordingly, *Fulbright* is inapposite. The district court did not err by applying U.S.S.G. § 2J1.2 because Weber's threat did not make the case atypical and U.S.S.G. § 2J1.2 specifically applies to § 1503 convictions.

## CONCLUSION

Because we conclude (1) that Weber's revocation proceeding was pending for purposes of § 1503, (2) the government presented sufficient evidence for the jury to conclude that Weber had the requisite intent to obstruct justice and his threat bore a sufficient relationship to the pending revocation proceeding, and (3) the district court did not err by applying U.S.S.G. § 2J1.2, we AFFIRM Weber's conviction and sentence.

**AFFIRMED.**