**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

JUL 22 2019

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 18-30123 |
| Plaintiff-Appellee, | D.C. No.<br>6:16-cr-00081-MC-1 |
| v. | |
| MARCELLUS LESLIE SMITH, | MEMORANDUM* |
| Defendant-Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 18-30124 |
| Plaintiff-Appellee, | D.C. No.<br>6:11-cr-60050-MC-1 |
| v. | |
| MARCELLUS LESLIE SMITH, | |
| Defendant-Appellant. | |

Appeals from the United States District Court
for the District of Oregon
Michael J. McShane, Judge, Presiding

Argued March 7, 2019; Resubmitted June 26, 2019
Portland, Oregon

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before: GRABER and BERZON, Circuit Judges, and ROBRENO,** District Judge.

Defendant Marcellus Leslie Smith is a convicted bank robber whose supervised release was revoked on the grounds that he committed a felony assault, possessed a weapon, and used alcohol. Smith appeals the district court's finding that he committed any assault, felonious or otherwise, and argues that his due process rights were violated. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

**Felony Assault**

We review for abuse of discretion the district court's decision to revoke supervised release. *United States v. Verduzco*, 330 F.3d 1182, 1184 (9th Cir. 2003). We review the district court's factual findings in revoking supervised release for clear error. *United States v. Lomayaoma*, 86 F.3d 142, 146 (9th Cir. 1996). We review *de novo* whether the district court had sufficient evidence to support its findings. *United States v. Weber*, 320 F.3d 1047, 1050 (9th Cir. 2003). We review an appeal premised on insufficiency of the evidence by asking whether any rational trier of fact, viewing the evidence in the light most favorable to the government, "could have found the essential elements of a violation by a preponderance of the evidence." *United States v. King*, 608 F.3d 1122, 1129 (9th

---

** The Honorable Eduardo C. Robreno, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

Cir. 2010) (quoting *United States v. Jeremiah*, 493 F.3d 1042, 1045 (9th Cir. 2007)).

Oregon's statute for misdemeanor assault states that "[a] person commits the crime of assault in the fourth degree if the person . . . [i]ntentionally, knowingly or recklessly causes physical injury to another." Or. Rev. Stat. § 163.160(1)(a). A misdemeanor assault becomes a felony if the "[t]he assault is committed in the immediate presence of, or is witnessed by, . . . the victim's minor child." *Id.* § 163.160(3)(a). The statute further provides that "an assault is witnessed [by the child] if the assault is seen or directly perceived in any other manner by the child." *Id.* § 163.160(4).

"[A] child 'directly perceives' an assault if the child contemporaneously is aware through any of the child's senses that an assault is occurring—*i.e.*, that one person is causing injury to another." *State v. Rader*, 228 P.3d 552, 558 (Or. 2010) (reversing the trial court where too many inferences were required to find that the victim's child, aged three, had perceived the assault). Furthermore, "[w]hen the state contends that a child heard and thus directly perceived an assault, it is sufficient to show that the child was aware that the sounds arose from assaultive conduct. The child need not be aware of the details or the specifics of the assault." *Id.* "Reasonable inferences are permissible; speculation and guesswork are not," and "evidence is insufficient if it requires the stacking of inferences to the point of

speculation." *State v. Bivins*, 83 P.3d 379, 383 (Or. Ct. App. 2004) (reversing the trial court where too many inferences were required to find that the victim's children, aged five and three, had perceived the assault). "[T]he evidence must be sufficient for the trier of fact to draw a reasonable inference not only that the child could have heard the sounds arising from the assault but that the child also was aware of those sounds and that they arose from assaultive conduct." *Rader*, 228 P.3d at 560.

Here, the assault victim's 16-year-old daughter, JC, is the perceptive minor. JC was upstairs when the assault happened. Police responded to a domestic violence call at the apartment complex where the victim lived with JC and her siblings. When the officers arrived at the complex, they heard what sounded like boards breaking and also raised voices; they approached the apartment from where the sounds were emanating. The officers gained entry to the victim's apartment when JC opened the door after some delay.

The government introduced video footage captured by the bodycams of the responding police. The videos showed the injuries of the victim (JC's mother), including a large swelling on her cheek, and the victim's demeanor and responses to officers' questions; the state of the victim's house, including significant damage to the drywall and broken glass on the floor; JC's demeanor and her responses to an officer's questions; and Smith's demeanor and his responses to an officer's

questions.

Although JC stayed upstairs with her younger siblings, and she turned up the volume on the television, given that the loud crashes and bangs prompted a neighbor to believe that a fight was happening and that police assistance was needed, it was reasonable for the district court to infer that (i) JC could have heard the sounds of her mother being assaulted; (ii) JC heard the sounds; and (iii) JC understood what was causing the sounds. Indeed, the fact that JC turned up the volume on the television suggests that she heard the assault and acted because of it. Thus, a rational trier of fact had sufficient evidence, when viewing the facts in the light most favorable to the government, to find by a preponderance of the evidence that Smith assaulted JC's mother and that JC perceived the assault.

**Due Process**

Whether a defendant has received due process at a violation of supervised release hearing is a mixed question of law and fact to be reviewed *de novo*. *United States v. Perez*, 526 F.3d 543, 547 (9th Cir. 2008). We conduct harmless error analysis. *Id.*

Smith argues that the admission of hearsay evidence violated his due process rights to confront adverse witnesses at a violation of supervised release hearing. Before reaching the issue of harmless error, we must first determine whether the district court relied on the hearsay evidence at issue. *See, e.g.*, *United States v.*

*Comito*, 177 F.3d 1166, 1169-73 (9th Cir. 1999) (conducting harmless error analysis after finding that the challenged hearsay evidence was "important to the court's finding").

The district court gave a full and clear explanation as to how its decision was reached. The court's factual findings were essentially a condensed version of the events captured by the video, highlighting key aspects of what was shown. The court also explained that the statements of Smith and the victim were not credible. The court made no mention of the challenged hearsay evidence. Because there is no reason to presume that the court relied on or even considered the hearsay evidence as part of its factual findings, there cannot be a due process violation.

**AFFIRMED.**

18-30123 & 18-30124

*United States v. Smith*, Nos. 18-30123, 18-30124

BERZON, Circuit Judge, dissenting in part:

I concur in the memorandum disposition except for the felony assault holding. In my view, JC, the victim's daughter and the perceptive minor in the case, could not have "directly perceive[d]" the assault. Or. Rev. Stat. §163.160(4).

As the majority recites, "a child 'directly perceives' an assault if the child contemporaneously is aware through any of the child's senses that an assault is occurring—*i.e.*, that one person is causing injury to another." *State v. Rader*, 228 P.3d 552, 558 (Or. 2010). Here, according to what JC told the police, after hearing the beginning of a loud argument, JC went into an upstairs room, closed the door, and turned the television volume up—all so that she and the victim's three other young children would not be able to hear what was going on below. To support its conclusion that there was nonetheless sufficient evidence to conclude that JC heard the assault (as opposed to the earlier verbal argument), the majority points only to evidence that a neighbor was able to hear the sounds of the altercation from outside the apartment. But there is no indication that the neighbor had a sound impediment that interfered with hearing what was going on in the

downstairs part of JC's house. In contrast, JC was upstairs, behind a closed door, listening to a television purposely turned up loud enough to obscure sounds from downstairs. Given these circumstances, what the neighbor heard is no evidence at all that JC was "contemporaneously aware through any of [her] senses" that there was a physical assault going on.

As there is no other evidence of JC's contemporaneous visual or oral perception of the assault, there was insufficient evidence for the district court to revoke Smith's supervised release because he had committed felony assault under Oregon law. *See United States v. King*, 608 F.3d 1122, 1129 (9th Cir. 2010).